DEBRA BUELL *v.* AMERICAN UNIVERSAL
INSURANCE COMPANY
(14488)

BORDEN, BERDON, NORCOTT, F. X. HENNESSY and MENT, Js.

Argued October 2, 1992—decision released March 2, 1993

*Steven D. Ecker,* with whom, on the brief, was *Howard A. Jacobs,* for the appellant-appellee (plaintiff).

*Stephen G. Murphy, Jr.,* for the appellee-appellant (defendant).

BERDON, J. This appeal, which is the companion case to *Stephan* v. *Pennsylvania General Ins. Co.,* 224 Conn. 758, 621 A.2d 258 (1993), presents the following issues: (1) whether the trial court properly allowed the defendant, American Universal Insurance Company (American), which provided underinsured motorist coverage, to limit its liability to the insured by taking credit for a liability payment made to another claimant; (2) whether the trial court abused its discretion by awarding the insured statutory interest on the arbitration award from the date of the award; (3) whether the trial court properly ruled that the plaintiff, Debra Buell, had exhausted all applicable bodily injury policies, thereby entitling her to underinsured motorist coverage; and (4) whether the trial court properly ruled that American was not entitled to take credit for a $2500 settlement payment made to Buell.

The following facts are undisputed. On April 9, 1986, Buell was operating her automobile on Route 1 in East Haven. She was accompanied by a passenger, Pearly Nivens. Buell's automobile was stopped at a traffic light in front of an automobile operated by Joan Lozier, when a third vehicle, operated by Patricia Vorio, collided with Lozier's vehicle. Lozier's vehicle, in turn, collided with Buell's vehicle. Buell, who was injured in the accident, brought suit against Lozier and Vorio, alleging that both were negligent.

Vorio was insured by Aetna Casualty and Surety Company (Aetna) under a policy that provided $50,000 single limit liability coverage. The coverage available under the Aetna policy was divided between Buell, who received $29,000, and Nivens, who received $21,000. Lozier was insured by American under a policy that provided $100,000 liability coverage. Buell received $2500 and Nivens received $3500 under Lozier's policy with American.

Buell, who was also insured by American, made a demand for arbitration under the terms of her policy, which provided a total of $100,000 underinsured motorist coverage.[1] The arbitration panel concluded that Vorio's negligence was the proximate cause of the accident, and that no credible evidence had been introduced to show that Lozier had been negligent. The majority of the arbitrators found that Buell had suffered $78,000 in damages. They reduced that amount by the $29,000 payment made by Aetna and by the $2500 payment made by American, arriving at a total award of $46,500.

American sought to vacate the arbitration award pursuant to General Statutes § 52-418.[2] Buell in turn sought to confirm the arbitration award pursuant to General Statutes § 52-417[3] and filed a motion for

[1] Buell was insured under the American policy for both of her automobiles, each of which had underinsured motorist limits of $50,000. She therefore had a total of $100,000 underinsured motorist coverage under the American policy. *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 446 A.2d 1059 (1982). We have often held that statutes and regulations that apply to uninsured motorist coverage equally apply to underinsured motorist coverage. *Lumbermens Mutual Casualty Co.* v. *Huntley,* 223 Conn. 22, 28 n.9, 610 A.2d 1292 (1992); *General Accident Ins. Co.* v. *Wheeler,* 221 Conn. 206, 210–11, 603 A.2d 385 (1992); *Nationwide Ins. Co.* v. *Gode,* supra, 399–400.

[2] General Statutes § 52-418 provides in relevant part: "(a) Upon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

[3] General Statutes § 52-417 provides in pertinent part: "At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court . . . for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

an award of interest under General Statutes § 37-3a[4] from the date of the arbitration award.

The trial court modified the award, holding that it should be further reduced by the $21,000 payment made to Nivens. The court also held, however, that the award should not be reduced by the $2500 payment made to Buell under Lozier's policy. As modified, the total award amounted to $28,000. In addition, the court awarded interest on the award from the date of the arbitration. Buell appealed from the judgment of the trial court to the Appellate Court and American filed a cross appeal. We transferred the appeal and cross appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

I

We first address Buell's claim that the trial court improperly determined that American's policy permitted it to reduce the amount of her award by taking credit for the $21,000 payment made to Nivens by Aetna. "In reviewing compulsory arbitration cases, this court must conduct a de novo review of the arbitrator's interpretation and application of the law. *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 191, 530 A.2d 171 (1987)." *Lumbermens Mutual Casualty Co.* v. *Huntley,* 223 Conn. 22, 26, 610 A.2d 1292 (1992). In assessing the merits of this claim, we are guided by our holding in the companion case, *Stephan* v. *Pennsylvania General Ins. Co.,* supra, which presented the very same issue. The policy language in this case is similar to the policy language in *Stephan* and provides: "The limit of liability shall be reduced by all sums: (1) Paid because of the 'bodily injury' by or on behalf of persons or organizations who may be legally responsible.

---

[4] General Statutes § 37-3a provides in pertinent part: "[I]nterest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions or arbitration proceedings . . . ."

This includes all sums paid under Part A . . . ." Here, as in *Stephan,* the policy provides that the insurer may limit its liability by payments made because of *"the* bodily injury," not "a bodily injury" or "any bodily injury." We conclude that this phrase refers only to the claimant's bodily injury and not to the bodily injuries of others. Accordingly, the policy did not permit American to reduce the damages owed to Buell by taking credit for the payment to Nivens. Moreover, because the policy does not permit the insurer to take credit for this payment, we need not go further to determine whether General Statutes § 38a-336 (b) or § 38-175a-6 (d) of the Regulations of Connecticut State Agencies would permit the credit.

## II

In its cross appeal, American claims that the trial court improperly awarded interest to Buell from the date of the arbitration award pursuant to General Statutes § 37-3a.[5] As we noted in *Stephan* v. *Pennsylvania General Ins. Co.,* supra, 765, "[w]hether interest should be allowed as an element of damages is primarily an equitable determination and a matter within the discretion of the trial court. . . . *Middlesex Mutual Assurance Co.* v. *Walsh,* 218 Conn. 681, 701–702, 590 A.2d 957 (1991)." (Internal quotation marks omitted.) In determining whether to award interest, the trial court must determine whether the money involved is "payable"; General Statutes § 37-3a; see *White Oak Corporation* v. *Department of Transportation,* 217 Conn. 281, 302, 585 A.2d 1199 (1991); and whether the money was "wrongfully" withheld. *White Oak Corporation* v. *Department of Transportation,* supra. Only upon a showing of a clear abuse of discretion will we overturn the trial court's award of interest. *Chmielewski* v. *Aetna Casualty & Surety Co.,* 218 Conn. 646, 676, 591 A.2d

---

[5] See footnote 4.

101 (1991). American argues that the trial court abused its discretion by awarding interest in this case because American was placed into receivership on the date that the arbitration award was made. This fact and others were before the court when it exercised its discretion to allow interest on the award. American has not demonstrated that the trial court abused its discretion in this case.

Because this decision increases the net award to Buell by reinstating the arbitrators' original award of $46,500 in place of the trial court's award of $28,000, and because the award of interest is a matter of discretion to be decided by the trial court, we remand this case to the trial court to determine the amount upon which interest should run. *Stephan* v. *Pennsylvania General Ins. Co.,* supra.

### III

In its cross appeal, American also claims that the trial court improperly ruled that Buell had exhausted all applicable bodily injury policies so as to be entitled to underinsured motorist coverage. We recently decided this issue in *General Accident Ins. Co.* v. *Wheeler,* 221 Conn. 206, 603 A.2d 385 (1992). There, we held that under the provisions of General Statutes § 38a-336 (b) and (d), an insured is required to exhaust the "liability bond or insurance policies" of only one tortfeasor in order to be eligible to pursue underinsured motorist benefits. Id., 214. In the present case, it is undisputed that Vorio's policy with Aetna had been exhausted.[6] Following our reasoning in *General Accident Ins. Co.* v. *Wheeler,* supra, we conclude that the trial court correctly held that Buell had exhausted all applicable bodily injury policies, thereby entitling her to underinsured motorist coverage.

[6] During arbitration, the parties stipulated that Vorio's policy with Aetna had been exhausted, but that Lozier's policy with American had not been exhausted.

## IV

American's final claim in its cross appeal is that the trial court improperly ruled that it was not entitled to take credit for the $2500 payment that Buell received under Lozier's policy with American. We conclude that American was entitled to deduct the $2500 payment from the total damages owed to Buell.

The policy at issue in this case specifically provided that "no one will be entitled to receive duplicate payments for the same elements of loss." In this case the "element of loss" is Buell's bodily injury from the accident. The $2500 payment, which was made in settlement of Buell's suit against Lozier, served two purposes—to avoid litigation of the claim against Lozier and to compensate Buell for her bodily injuries. As a result, if American were not permitted to deduct the $2500 payment made by Lozier's insurer, Buell would receive duplicate payments for her bodily injury. Accordingly, the plain language of the policy permits American to deduct the $2500 payment to prevent duplicate recovery.

Buell argues that even if the policy permits the reduction, it is not permitted by General Statutes § 38a-336 (b)[7] and § 38-175a-6 (d) of the Regulations of Connecticut State Agencies[8] because it is not a payment made "by or on behalf of any person responsible for the injury."

[7] General Statutes § 38a-336 (b), formerly General Statutes § 38-175c (b) (1), provides: "An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured [underinsured] motorist coverage after the limits of liability . . . have been exhausted by payment of judgments or settlements . . . ."

[8] Section 38-175a-6 (d) of the Regulations of Connecticut State Agencies provides in relevant part: "The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of section 14-112 of the general statutes, except that the policy may provide for the reduction of limits to the extent that damages have been (1) paid by or on behalf of any person responsible for the injury. . . ."

We have previously held that § 38-175a-6 (d) (1) permits an insurer who provides underinsured motorist coverage to limit its liability by taking credit for a personal payment made by a tortfeasor to the insured. *Lumbermens Mutual Casualty Co.* v. *Huntley,* supra, 30. The trial court in this case concluded, however, that because the arbitrators had determined that Lozier was not at fault in causing the accident, the $2500 payment made by American on behalf of Lozier could not be deducted because it was not made "by or on behalf of any person responsible for the injury." We disagree.

As noted above, the payment in this case settled the lawsuit between Lozier and Buell. Although the arbitrators determined that Lozier was not at fault for purposes of arbitration, the issue of Lozier's liability was never formally litigated. Lozier was not a party to the arbitration. At issue, then, is whether a settlement payment constitutes a payment made "by or on behalf of any person responsible for the injury."

We have previously held that the plain words of § 38a-336 (b) "simply require that each policy provide a minimum level of uninsured [underinsured] motorist coverage for the protection of persons insured thereunder."[9] (Internal quotation marks omitted.) *Wilson* v. *Security Ins. Co.,* 213 Conn. 532, 538, 569 A.2d 40, cert. denied, 498 U.S. 814, 111 S. Ct. 52, 112 L. Ed. 2d 28 (1990). "The public policy established by the uninsured [underinsured] motorist statute is that every insured is entitled to recover for the damages he or she would have been able to recover if the uninsured

[9] We have often held that " '[w]hen the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent.' " *Weinberg* v. *ARA Vending Co.,* 223 Conn. 336, 341, 612 A.2d 1203 (1992). If, however, the statute is ambiguous, we turn to the legislative history for guidance. *Sanzone* v. *Board of Police Commissioners,* 219 Conn. 179, 188, 592 A.2d 912 (1991); *Shelby Mutual Ins. Co.* v. *Della Ghelfa,* 200 Conn. 630, 637–38, 513 A.2d 52 (1986).

[underinsured] motorist had maintained a policy of liability insurance. *Harvey* v. *Travelers Indemnity Co.,* 188 Conn. 245, 249, 449 A.2d 157 (1982); *American Universal Ins. Co.* v. *DelGreco,* supra, 197. It is a time-honored rule that an injured party is entitled to full recovery only once for the harm suffered. *Peck* v. *Jacquemin,* 196 Conn. 53, 70 n.19, 491 A.2d 1043 (1985). An insured may not recover double payment of damages under overlapping insurance coverage. *Pecker* v. *Aetna Casualty & Surety Co.,* 171 Conn. 443, 452, 370 A.2d 1006 (1976)." (Internal quotation marks omitted.) *Rydingsword* v. *Liberty Mutual Ins. Co.,* 224 Conn. 8, 18, 615 A.2d 1032 (1992).

With this background in mind, we consider whether § 38-175a-6 (d) (1), which permits an insurer to limit its liability by deducting amounts "paid by or on behalf of any party responsible for the injury," allows an insurer to deduct a settlement payment from the damages owed to its insured. In light of the legislative intent to provide a certain minimum level of protection, but to prevent double recovery on the part of the insured, we conclude that an insurer may limit its liability by deducting a settlement payment from the damages owed to its insured. To hold otherwise would provide the insured a windfall by permitting duplicate payments for the same injury. The arbitrators properly determined that American was entitled to limit its liability by taking credit for the $2500 payment to Buell.

The judgment is reversed in part and the case is remanded to the trial court with direction to modify the judgment by reinstating the arbitrators' award of $46,500 and to determine the amount upon which interest should run.

In this opinion the other justices concurred.