# NATALIA GARCIA *v.* ITT HARTFORD INSURANCE COMPANY
## (AC 22151)

Lavery, C. J., and Foti and Dranginis, Js.

Submitted on briefs June 5—officially released September 24, 2002

*Richard L. Zayas* filed a brief for the appellant (plaintiff).

*Giovanna Trocchi Giardina* filed a brief for the appellee (defendant).

*Opinion*

LAVERY, C. J. We address in this case whether the uninsured-underinsured motorists statute, General Statutes § 38a-336 (b), and the regulations adopted thereunder, bar recovery as a matter of law in multitortfeasor accidents in which the claimant settles with an identified tortfeasor for more than the amount of her uninsured or underinsured motorists coverage. The plaintiff, Natalia Garcia, appeals from the judgment rendered in favor of the defendant, ITT Hartford Insurance Company, following the trial court's granting of the defendant's motion for summary judgment. We are guided by the principles set forth in *Collins* v. *Colonial Penn Ins. Co.*, 257 Conn. 718, 778 A.2d 899 (2001) (en banc), and reverse the judgment of the trial court.

The parties do not disagree on the facts relevant to the plaintiff's appeal, but diverge on the issue of whether the defendant is entitled to judgment as a matter of law. A review of the record and briefs reveals the following. At approximately 4:50 p.m. on January 22, 1997, the plaintiff was riding in an automobile driven by Luz Rivera that was traveling north along Wethersfield Avenue in Hartford behind an unidentified automobile. Suddenly, the unidentified automobile made a sharp left turn onto Goodrich Street, causing Stanley Ziemaicki, who was driving an automobile south on Wethersfield Avenue, to swerve into the northbound lane and hit Rivera's vehicle. The plaintiff sustained injuries as a result.

The plaintiff made a claim for damages with Ziemaicki's automobile insurer, National Grange Insurance

Company. She also made a claim with Rivera's automobile insurer, the defendant, as a surrogate for the driver of the unidentified automobile. Part C of the defendant's insurance policy states in relevant part: "Uninsured/ Underinsured Motorists Coverage . . . B. *'Insured'* as used in this Part means . . . 2. Any other person *occupying your covered auto. . . . C. 'Uninsured motor vehicle'* means a land motor vehicle . . . 2. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an accident resulting in bodily injury without hitting . . . c. your covered auto." (Emphasis in original.) See also id., 732. National Grange Insurance Company settled with the plaintiff for Ziemaicki's policy limit of $100,000.

On May 8, 1998, the plaintiff brought a complaint against the defendant seeking further damages under Rivera's uninsured motorists policy. The defendant's answer denied most of the allegations in the complaint and set forth five special defenses, claiming that the plaintiff's action failed as a matter of law and for failure to comply with the policy terms. On June 22, 1998, the defendant filed an apportionment complaint against Ziemaicki, alleging that he was partially or entirely at fault for the accident.

The defendant thereafter filed a motion for summary judgment on the basis of its special defenses. The defendant first claimed that the action failed as a matter of law because the $100,000 settlement set off Rivera's $50,000 uninsured motorist policy. The defendant's second claim was that the plaintiff had violated the terms of the policy by entering into the settlement without the defendant's consent. Citing a case from our Supreme Court; *Buell* v. *American Universal Ins. Co.*, 224 Conn. 766, 621 A.2d 262 (1993); one from this court; *Fahey* v. *Safeco Ins. Co. of America*, 49 Conn. App. 306, 714 A.2d 686 (1998); and one from the Superior Court; *Hanz* v. *Dragone Enterprises*, Superior Court, judicial district

of Fairfield, Docket No. 350501 (July 28, 2000) (27 Conn.
L. Rptr. 547); the trial court concluded that "because
the uninsured motorists coverage of the defendant in
the amount of $50,000 is effectively reduced to zero
because of the plaintiff's receipt of $100,000 for her
injuries, the defendant's motion for summary judgment
is granted." The court did not reach the consent issue
in its opinion.[1]

The plaintiff appealed, claiming that the court
improperly concluded that the defendant was entitled
to set off the uninsured motorists coverage by the settle-
ment without an assessment of damages at trial.

Summary judgment "shall be rendered forthwith if
the pleadings, affidavits and any other proof submitted
show that there is no genuine issue as to any material
fact and that the moving party is entitled to judgment
as a matter of law." Practice Book § 17-49. Although
the parties agree on the facts, we conclude that the
defendant was not entitled to judgment as a matter
of law.

"Because the trial court rendered judgment for the
[defendant] as a matter of law, our review is plenary
and we must decide whether [the trial court's] conclu-

---

[1] The defendant does not raise the plaintiff's failure to obtain its consent
to settle with the identified tortfeasor as an alternate ground for affirmance.
Accordingly, we consider the claim to be abandoned. See *Sandvig* v. *A.
Dubreuil & Sons, Inc.*, 68 Conn. App. 79, 89, 789 A.2d 1012, cert. granted
on other grounds, 260 Conn. 931, 799 A.2d 296 (2002). In any event, we
disagree with any argument that the defendant's policy terms and § 38a-
334-6 (c) (1) of the Regulations of Connecticut State Agencies categorically
require an insurer's consent as a precondition for a plaintiff to settle. As
we stated recently, the rationale underlying the consent to settle provision
"is nothing more than part of the process of exhausting the tortfeasor's
liability protection. Specifically, the consent provision allows the insurer to
ensure that the settlement offered by the tortfeasor's insurance provider
does, in fact, exhaust the limits of the tortfeasor's coverage." *Tracy* v.
*Allstate Ins. Co.*, 70 Conn. App. 726, 732, 799 A.2d 1109 (2002). It follows,
therefore, that when an injured party exhausts the tortfeasor's coverage,
the consent of the insurer is not required.

sions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Kronberg* v. *Peacock*, 67 Conn. App. 668, 672, 789 A.2d 510, cert. denied, 260 Conn. 902, 793 A.2d 1089 (2002). Following our own interpretation of the statute, regulations and policy, as well as guidance from our Supreme Court in *Collins*, we conclude that the court's conclusions are not legally correct.

"Because statutory interpretation is a question of law, our review is de novo. . . . When we construe a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Furthermore, [w]e presume that laws are enacted in view of existing relevant statutes . . . because the legislature is presumed to have created a consistent body of law. . . . We construe each sentence, clause or phrase to have a purpose behind it. . . . In addition, we presume that the legislature intends sensible results from the statutes it enacts. . . . Therefore, we read each statute in a manner that will not thwart its intended purpose or lead to absurd results." *Collins* v. *Colonial Penn Ins. Co.*, supra, 257 Conn. 728–29. As with statutory interpretation, we interpret the terms in an insurance contract to give effect to the intent of the parties. See *Kitmirides* v. *Middlesex Mutual Assurance Co.*, 65 Conn. App. 729, 731–32, 783 A.2d 1079 (2001), aff'd, 260 Conn. 336, 796 A.2d 1185 (2002), citing *Pacific Indemnity Ins. Co.* v. *Aetna Casualty & Surety Co.*, 240 Conn. 26, 29, 688 A.2d 319 (1997). Construction of an insurance contract is afforded de novo review; *Fahey* v. *Safeco Ins. Co. of America*, supra, 49 Conn. App. 317; and the

terms of the policy are given their ordinary meaning. *Kilmirides* v. *Middlesex Mutual Assurance Co.*, supra, 732.

General Statutes § 38a-336 (b) provides in relevant part: "An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured and underinsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured and underinsured motorist coverage, exceed the limits of the insured's uninsured and underinsured motorist coverage. . . ." Additionally, the regulations adopted thereunder; see General Statutes § 38-334; provide in relevant part: "(a) Coverage. The insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle because of bodily injury sustained by the insured caused by an accident involving the uninsured or underinsured motor vehicle. . . . (d) Limits of liability . . . (1) The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of section 14-112 of the general statutes, except that the policy may provide for the reduction of limits to the extent that damages have been . . . (A) paid by or on behalf of any person responsible for the injury . . . ." Regs., Conn. State Agencies § 38a-334-6.

The defendant also refers us to its policy, which, in the section titled "Uninsured/Underinsured Motorists Coverage," states in relevant part: "B. The limit of liability shall be reduced by all sums: (1) Paid because of the *bodily injury* by or on behalf of persons or organiza-

tions who may be legally responsible. . . ." (Emphasis in original.)

"The public policy established by the uninsured motorist statute is to ensure that an insured recovers damages he or she would have been able to recover if the uninsured motorist had maintained a policy of liability insurance." *Sandor* v. *New Hampshire Ins. Co.*, 241 Conn. 792, 800, 699 A.2d 96 (1997). We also note, however, that "the insurer is not the alter ego of the tortfeasor"; (internal quotation marks omitted) *Vitti* v. *Allstate Ins. Co.*, 245 Conn. 169, 187, 713 A.2d 1269 (1998); and that the "amount of overall benefits available to a plaintiff be equal to the amount of *coverage* available from a tortfeasor with an equivalent policy." (Emphasis in original.) Id., 189.

The precise issue here is whether, in a multiple tortfeasor context, the injured party is precluded as a matter of law from recovering under an uninsured motorists policy where she has settled with one tortfeasor for an amount greater than the uninsured motorists coverage against which she is claiming. That issue has been litigated at the trial level with varying outcomes. We find the recent decision in *Martanis* v. *Liberty Mutual Fire Ins. Co.*, Superior Court, judicial district of Ansonia-Milford, Docket No. 0065733 (February 8, 2002) (31 Conn. L. Rptr. 488), to be persuasive. There, the court was faced with an almost identical factual (plaintiff involved in three car accident with one insured and one uninsured motor vehicle) and procedural (plaintiff's uninsured motorists insurance carrier standing in shoes of uninsured motorist sought summary judgment, arguing plaintiff's $450,000 settlement with insured motorist's insurer entirely setoff $200,000 uninsured motorist benefits) scenario. Denying the defendant's motion for summary judgment, the *Martanis* court concluded in a thoughtful and well reasoned memorandum of decision that the apportionment analysis of *Collins*

precluded a setoff, and, in the alternative, that any setoff should be made only after a fact finder assesses damages. After our own analysis, we reach the same conclusions as did the *Martanis* court.

We first conclude that the rationale of our Supreme Court in *Collins* v. *Colonial Penn Ins. Co.*, supra, 257 Conn. 718, requires, in the multitortfeasor context, a fact finder to apportion the plaintiff's damages and that any setoff apply to only a percentage of the damages rather than to a dollar for dollar reduction. The plaintiff in *Collins* was involved in a three car accident with one identified and one unidentified motor vehicle. Id., 721. She brought an action against the identified driver, as well as her own insurance carrier acting as a surrogate for the driver of the unidentified automobile. Id. After the start of the jury trial, the plaintiff settled with her insurance carrier for $95,000 of her $100,000 policy. Id. & n.4. The jury returned a verdict for the plaintiff in the amount of $86,340. Id., 725.

The identified driver appealed, arguing that the court improperly allowed the plaintiff a double recovery by refusing to set off the amount of the settlement and improperly refused the defendant's request to instruct the jury, pursuant to General Statutes § 52-572h, to apportion the percentage of negligence between the identified and unidentified drivers. *Collins* v. *Colonial Penn Ins. Co.*, supra, 257 Conn. 725–26. The court reversed the judgment and remanded the case for a new trial, concluding that it was plain error for the jury not to have been instructed on apportionment. Id., 726–27.

Although it did not reach the setoff question, the *Collins* court did address several issues that are relevant to our disposition of the plaintiff's appeal. Recon-

ciling the uninsured motorist statutes with § 52-572h,[2]

[2] General Statutes § 52-572h provides in relevant part: "(a) For the purposes of this section: (1) 'Economic damages' means compensation determined by the trier of fact for pecuniary losses including, but not limited to, the cost of reasonable and necessary medical care, rehabilitative services, custodial care and loss of earnings or earning capacity excluding any noneconomic damages; (2) 'noneconomic damages' means compensation determined by the trier of fact for all nonpecuniary losses including, but not limited to, physical pain and suffering and mental and emotional suffering; (3) 'recoverable economic damages' means the economic damages reduced by any applicable findings including but not limited to set-offs, credits, comparative negligence, additur and remittitur, and any reduction provided by section 52-225a; (4) 'recoverable noneconomic damages' means the noneconomic damages reduced by any applicable findings including but not limited to set-offs, credits, comparative negligence, additur and remittitur.

"(b) In causes of action based on negligence, contributory negligence shall not bar recovery in an action by any person or the person's legal representative to recover damages resulting from personal injury, wrongful death or damage to property if the negligence was not greater than the combined negligence of the person or persons against whom recovery is sought including settled or released persons under subsection (n) of this section. The economic or noneconomic damages allowed shall be diminished in the proportion of the percentage of negligence attributable to the person recovering which percentage shall be determined pursuant to subsection (f) of this section.

"(c) In a negligence action to recover damages resulting from personal injury, wrongful death or damage to property occurring on or after October 1, 1987, if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for such party's proportionate share of the recoverable economic damages and the recoverable noneconomic damages except as provided in subsection (g) of this section.

"(d) The proportionate share of damages for which each party is liable is calculated by multiplying the recoverable economic damages and the recoverable noneconomic damages by a fraction in which the numerator is the party's percentage of negligence, which percentage shall be determined pursuant to subsection (f) of this section, and the denominator is the total of the percentages of negligence, which percentages shall be determined pursuant to subsection (f) of this section, to be attributable to all parties whose negligent actions were a proximate cause of the injury, death or damage to property including settled or released persons under subsection (n) of this section. Any percentage of negligence attributable to the claimant shall not be included in the denominator of the fraction.

"(e) In any action to which this section is applicable, the instructions to the jury given by the court shall include an explanation of the effect on awards and liabilities of the percentage of negligence found by the jury to

the *Collins* court ultimately concluded that the legisla-

be attributable to each party.

"(f) The jury or, if there is no jury, the court shall specify: (1) The amount of economic damages; (2) the amount of noneconomic damages; (3) any findings of fact necessary for the court to specify recoverable economic damages and recoverable noneconomic damages; (4) the percentage of negligence that proximately caused the injury, death or damage to property in relation to one hundred per cent, that is attributable to each party whose negligent actions were a proximate cause of the injury, death or damage to property including settled or released persons under subsection (n) of this section; and (5) the percentage of such negligence attributable to the claimant.

"(g) (1) Upon motion by the claimant to open the judgment filed, after good faith efforts by the claimant to collect from a liable defendant, not later than one year after judgment becomes final through lapse of time or through exhaustion of appeal, whichever occurs later, the court shall determine whether all or part of a defendant's proportionate share of the recoverable economic damages and recoverable noneconomic damages is uncollectible from that party, and shall reallocate such uncollectible amount among the other defendants in accordance with the provisions of this subsection. (2) The court shall order that the portion of such uncollectible amount which represents recoverable noneconomic damages be reallocated among the other defendants according to their percentages of negligence, provided that the court shall not reallocate to any such defendant an amount greater than that defendant's percentage of negligence multiplied by such uncollectible amount. (3) The court shall order that the portion of such uncollectible amount which represents recoverable economic damages be reallocated among the other defendants. The court shall reallocate to any such other defendant an amount equal to such uncollectible amount of recoverable economic damages multiplied by a fraction in which the numerator is such defendant's percentage of negligence and the denominator is the total of the percentages of negligence of all defendants, excluding any defendant whose liability is being reallocated. (4) The defendant whose liability is reallocated is nonetheless subject to contribution pursuant to subsection (h) of this section and to any continuing liability to the claimant on the judgment.

"(h) (1) A right of contribution exists in parties who, pursuant to subsection (g) of this section are required to pay more than their proportionate share of such judgment. The total recovery by a party seeking contribution shall be limited to the amount paid by such party in excess of such party's proportionate share of such judgment.

"(2) An action for contribution shall be brought within two years after the party seeking contribution has made the final payment in excess of such party's proportionate share of the claim.

\* \* \*

"(n) A release, settlement or similar agreement entered into by a claimant and a person discharges that person from all liability for contribution, but

ture "did not intend to create a separate law of damages for uninsured motorist claims different from that which exists for traditional negligence awards." Id., 742. To reach that conclusion, the court first noted that *Haynes* v. *Yale-New Haven Hospital*, 243 Conn. 17, 27, 699 A.2d 964 (1997), established that in situations in which the uninsured motorist carrier is acting as a surrogate for an unidentified driver, "the relationship between the underinsured motorist carrier and the defendant may be viewed as analogous to that of joint tortfeasors . . . ." *Collins* v. *Colonial Penn Ins. Co.*, supra, 257 Conn. 734. Second, the court distinguished between a jury award and a settlement. It stated that the "underlying rationale" of § 52-572h (n) "is that, rather than a settlement reducing the amount of the jury . . . award dollar-for-dollar . . . the amount of the award is reduced by the settling party's percentage of negligence. Thus, if a claimant settles with one potential tortfeasor, the plaintiff is allowed to keep the amount of that settlement, but the award against the remaining tortfeasor is reduced by the percentage of negligence attributable to the settling tortfeasor." Id., 734–35. Furthermore, a "plaintiff's settlement with one tortfeasor in a multitortfeasor context . . . does not necessarily represent a claimant's fair, just and reasonable damages but, rather, represents, in part, the parties' assessments of the risks of litigation." Id., 735.

Although it does not reach exactly the issue that we have here, we conclude that *Collins* is instructive. Just as a defendant is entitled to a fact finder's determination of apportionment and damages in this context, so, too, is the claimant. Here, of course, such an apportionment could come only after trial. Accordingly, we conclude

it does not discharge any other persons liable upon the same claim unless it so provides. However, the total award of damages is reduced by the amount of the released person's percentage of negligence determined in accordance with subsection (f) of this section. . . ."

that the court improperly concluded that the defendant was entitled to judgment as a matter of law. Any payment by the defendant would be predicated on a finding of culpability and should be reduced proportionately by the percentage of the unidentified driver's fault.

The defendant attempts to distinguish *Collins* on the facts. It notes that whereas the plaintiff in that case settled with her uninsured motorist carrier and proceeded to trial with the claim against the identified tortfeasor, we are faced with the opposite situation. See id., 720–21.

The defendant correctly identifies the procedural distinction between that case and this one. We disagree that it makes a difference. Under the defendant's hypothesis, the order in which a party settles or pursues claims in the multitortfeasor context could control the amount the plaintiff would be entitled to recover. Just as our Supreme Court concluded in *Haynes* v. *Yale-New Haven Hospital*, supra, 243 Conn. 30–31, that "it would be bizarre to say that the law permits a double recovery depending on the order of litigation of the plaintiff's claims"; so, too, would it be bizarre for a claimant's recovery to be restricted because she settled under the uninsured motorist policy first. It also could have the impermissible effect of discouraging settlements, which is contrary to our public policy. See *Collins* v. *Colonial Penn Ins. Co.*, supra, 257 Conn. 736.

Although we note that the appellate decisions relied on by the court in this case involved instances in which the amount of the uninsured-underinsured motorist policy was greater than the payment received from the policies at issue; see *Buell* v. *American Universal Ins. Co.*, supra, 224 Conn. 768–69 (plaintiff sought compensation from $100,000 underinsurance policy following receipt of $31,500 from insureds' policies); *Fahey* v. *Safeco Ins. Co. of America*, supra, 49 Conn. App. 308

(plaintiff sought compensation from $200,000 underinsurance policy following receipt of $100,000); we also note that both of those cases involved instances in which setoff occurred only after a fact finder had determined the extent of injuries. See *Buell* v. *American Universal Ins. Co.*, supra, 769 (arbitration panel concluded plaintiff suffered $78,000 damages); *Fahey* v. *Safeco Ins. Co. of America*, supra, 308 (jury found plaintiff suffered $90,064.77 damages). Additionally, *Buell* predated our Supreme Court's decision in *Collins*, and *Fahey* v. *Safeco Ins. Co. of America*, supra, 307, involved a single tortfeasor. In any event, we conclude that they are inapposite. Also inapposite is *Roy* v. *Centennial Ins. Co.*, 171 Conn. 463, 370 A.2d 1011 (1976), which the defendant argues is directly on point. Whereas the parties in that case had agreed that setoff would apply if the state insurance regulations and the language of the insurance policy at issue were valid; id., 466; no such agreement was made here.

Even if we were to determine that the apportionment analysis was inapplicable here, we still would conclude that any setoff would be required to be made after a fact finder's assessment of damages. As the *Collins* court noted, there is a difference between a fact finder's award and a settlement. *Collins* v. *Colonial Penn Ins. Co.*, supra, 257 Conn. 734. The defendant argues in its brief that the purpose of the uninsured motorist law is "to ensure that certain minimum protections are afforded to all motorists" and, because the plaintiff settled, she received everything to which she was entitled. Such an argument, however, overlooks that the defendant is standing in the shoes of the unidentified tortfeasor, whom the plaintiff has not settled with in any amount. Furthermore, our reading of the defendant's policy leads us to conclude that it aims to prevent duplicate payments, not to prevent any payment in contexts

such as this one. The "Limit of Liability," found in part A, "Liability Coverage," states: "C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and: 1. . . . ['Uninsured/Underinsured Motorists Coverage']." Similarly, the "Limit of Liability," found in part C, "Uninsured/Underinsured Motorists Coverage," states: "B. The limit of liability shall be reduced by all sums: 1. Paid because of the *bodily* injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under ['Liability Coverage'] . . . C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and ['Liability Coverage']." (Emphasis in original.) Accordingly, we conclude that the defendant's argument is unavailing.

The judgment is reversed and the case is remanded with direction to deny the defendant's motion for summary judgment and for further proceedings in accordance with law.

In this opinion the other judges concurred.