******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MICHELLE GUARINO, ADMINISTRATRIX (ESTATE
OF GEORGETTE DUFRESNE) *v.* ALLSTATE
PROPERTY AND CASUALTY
INSURANCE COMPANY
(SC 19168)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Robinson, Js.

*Argued September 19, 2014—officially released January 6, 2015*

*Gerald S. Sack*, with whom, on the brief, was *Jonathan A. Cantor*, for the appellant (plaintiff).

*Joshua O. Balter*, for the appellee (defendant).

*Opinion*

McDONALD, J. The plaintiff, Michelle Guarino, administratrix of the estate of Georgette Dufresne, brought this action against the defendant, Allstate Property and Casualty Insurance Company, to recover underinsured motorist benefits after she settled other actions against two motorists whose negligence she alleged had caused Dufresne's death. The issue before this court is whether, under such circumstances, it is necessary for a trier of fact to apportion fault and damages before coverage may be reduced under Dufresne's underinsured motorist policy for amounts paid by or on behalf of the underinsured motorist, or "anyone else responsible."

The trial court rejected that proposition and rendered summary judgment in favor of the defendant, concluding that Dufresne had no underinsured motorist coverage available because the plaintiff's recovery of settlement payments in an aggregate sum in excess of the policy's underinsured motorist coverage reduced her coverage to zero. The Appellate Court affirmed the judgment. *Guarino* v. *Allstate Property & Casualty Ins. Co.*, 142 Conn. App. 603, 610–13, 67 A.3d 300 (2013). In her certified appeal to this court, the plaintiff contends that the Appellate Court improperly failed to apply binding precedent under which a fact finder must apportion fault and damages before an insurer's liability may be reduced by settlement payments. We conclude that an underinsured motorist carrier is entitled to judgment as a matter of law when all alleged tortfeasors settle the insured's claims against them for the injuries giving rise to the underinsured motorist claim in an aggregate sum in excess of the policy limits. We further conclude that the apportionment cases on which the plaintiff relies are inapposite in such circumstances. Accordingly, we affirm the Appellate Court's judgment.

The issue before us arises in the context of the following undisputed facts. Dufresne died as a result of injuries sustained when her automobile was struck by another vehicle as she proceeded through an intersection without stopping at a stop sign posted there. The plaintiff thereafter filed actions, sounding in negligence, against Anton Paving, LLC (Anton), and Lombardi Tire and Auto Repair, LLC (Lombardi), the owners of two vehicles that she claimed had been parked at the side of the road in a manner that obstructed Dufresne's view of the stop sign.

At the time of the collision, Dufresne carried automobile insurance issued by the defendant that included coverage for bodily injuries caused by underinsured motorists. Dufresne's underinsured motorist coverage limit was $100,000 per person per accident. The policy contained the following language: "The limits of this coverage will be reduced by . . . all amounts paid by

or on behalf of the owner or operator of the uninsured auto or underinsured auto or anyone else responsible."

The plaintiff commenced the present action against the defendant after she settled the claim against Anton in return for a payment of $20,000. The plaintiff alleged that she was entitled to recover underinsured motorist benefits under Dufresne's policy because Anton's negligence had caused Dufresne's death and because she had exhausted Anton's policy for an amount less than her policy coverage. Pursuant to the defendant's request, the pending action against Lombardi was consolidated with the plaintiff's action against the defendant. Thereafter, the plaintiff settled the claims against Lombardi in return for a payment of $225,000. As part of that settlement, she executed a release similar to that signed as part of her settlement with Anton. Neither release included a stipulation of fault; in fact, both releases disclaimed liability.

Following Lombardi's settlement, the defendant filed a motion for summary judgment, asserting that the plaintiff was not entitled to underinsured motorist benefits because she had received payments from Anton and Lombardi in an amount that exceeded Dufresne's $100,000 policy limit. The plaintiff opposed the motion, contending that there would have to be a finding of fault and an apportionment of damages before there could be any reduction in coverage for Lombardi's payment. The court agreed with the defendant, granted its motion and rendered judgment in its favor.

The plaintiff appealed to the Appellate Court, which affirmed the judgment. *Guarino* v. *Allstate Property & Casualty Ins. Co.*, supra, 142 Conn. App. 604. The Appellate Court first determined that the policy provision setting forth the coverage limitation conformed in all material respects to insurance regulations governing that matter. Id., 608–10. It then determined that this court's decision in *Buell* v. *American Universal Ins. Co.*, 224 Conn. 766, 621 A.2d 262 (1993), supported the trial court's conclusion that the defendant was entitled to summary judgment under the undisputed facts of the case. *Guarino* v. *Allstate Property & Casualty Ins. Co.*, supra, 610–13.

In her certified appeal to this court, the plaintiff contends that the trial court and the Appellate Court improperly failed to follow *Garcia* v. *ITT Hartford Ins. Co.*, 72 Conn. App. 588, 805 A.2d 779 (2002), which she characterizes as applying the law set forth in *Collins* v. *Colonial Penn Ins. Co.*, 257 Conn. 718, 778 A.2d 899 (2001). She contends that *Garcia* held that, in a multitortfeasor context, a set off cannot be had for money recovered from a settling tortfeasor until a trier of fact apportions fault and damages. The plaintiff characterizes *Garcia* as factually and legally indistinguishable from the present case and as implicitly recognizing that *Buell* was overruled by *Collins*. Applying *Garcia*

to her case, the plaintiff contends that, although a reduction of damages for the $20,000 settlement with Anton as the underinsured motorist would be proper, it is not proper or possible to determine whether and to what extent Lombardi's settlement may reduce coverage unless a trier finds that he is "responsible" for Dufresne's injuries and apportions damages for Lombardi's proportionate responsibility.[1] We conclude that the defendant was entitled to summary judgment under settled legal principles applied in this court's decisions. We further conclude that there is no tension between those cases and the apportionment cases on which the plaintiff relies.

We first are guided by the underinsured motorist statutory and regulatory scheme. Under that scheme, "[a]n insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured and underinsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments *or settlements* . . . ." (Emphasis added.) General Statutes § 38a-336 (b). "The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of section 14-112 of the general statutes [currently $20,000], *except that the policy may provide for the reduction of limits to the extent that damages have been (A) paid by or on behalf of any person responsible for the injury* . . . ." (Emphasis added.) Regs., Conn. State Agencies § 38a-334-6 (d) (1) (A); see, e.g., *Fahey* v. *Safeco Ins. Co. of America*, 49 Conn. App. 306, 312, 714 A.2d 686 (1998) (concluding that claimant was not entitled to recover under policy when trier of fact awarded damages in amount less than settlement). It is undisputed that Dufresne's underinsured motorist policy conforms to these requirements because it reduces the $100,000 limit of coverage for each person in each accident by "all amounts paid by or on behalf of the owner or operator of the . . . underinsured auto or anyone else responsible."

It has often been stated that "[t]he public policy established by the [under]insured motorist statute is that every insured is entitled to recover for the damages he or she would have been able to recover if the [under]insured motorist had maintained [an adequate] policy of liability insurance." (Internal quotation marks omitted.) *Haynes* v. *Yale-New Haven Hospital*, 243 Conn. 17, 27, 699 A.2d 964 (1997); accord *Gormbard* v. *Zurich Ins. Co.*, 279 Conn. 808, 819, 904 A.2d 198 (2006); *Harvey* v. *Travelers Indemnity Co.*, 188 Conn. 245, 249, 449 A.2d 157 (1982). However, "[t]he statute does not require that [under]insured motorist coverage be made available when the insured has been otherwise protected . . . . Nor does the statute provide that the [under]insured motorist coverage shall stand as an independent source

of recovery for the insured, or that the coverage limits shall not be reduced under appropriate circumstances. The statute merely requires that a certain minimum level of protection be provided for those insured under automobile liability insurance policies . . . ." (Internal quotation marks omitted.) *Orkney* v. *Hanover Ins. Co.*, 248 Conn. 195, 205, 727 A.2d 700 (1999).

The aforementioned parameters and policies are the same irrespective of whether there is a single tortfeasor or multiple tortfeasors. In either case, the claimant is required to exhaust the policies of only one tortfeasor in order to recover underinsured benefits. *General Accident Ins. Co.* v. *Wheeler*, 221 Conn. 206, 207, 603 A.2d 385 (1992). This liberal rule, however, does not supersede the insurer's right under the regulation to limit coverage by any payments received by the claimant in settlement of claims for an indivisible injury.

The application of that principle is demonstrated by our decisions in *Buell* v. *American Universal Ins. Co.*, supra, 224 Conn. 766, and *Hartford Casualty Ins. Co.* v. *Farrish-LeDuc*, 275 Conn. 748, 750–51, 882 A.2d 44 (2005) (*Hartford Casualty*). In *Buell*, the claimant received payments in settlement of actions brought against two motorists that she claimed had caused her injuries. *Buell* v. *American Universal Ins. Co.*, supra, 768. The aggregate sum of the settlements was less than the claimant's underinsured motorist coverage. Id., 768–69. Thereafter, the claimant commenced an arbitration proceeding against her underinsured motorist carrier. Id., 769. Despite the fact that the arbitral panel found that one of the two motorists was not at fault; id.; this court held that the panel properly reduced the insurer's liability by the aggregate of both settlements. Id., 773–75. The court rejected the claimant's contention that the regulation permitting an insurer to reduce its liability by amounts paid "by or on behalf of any party responsible for the injury" was inapplicable to the settlement by the motorist found by the panel not to be at fault. (Internal quotation marks omitted.) Id., 773–74. The court reasoned that the liability of the settling motorists was never formally litigated, as they were not parties to the arbitration. Id., 774. The court further reasoned that permitting the reduction of the insurer's liability by both motorists' settlement payments was supported by the dual legislative intent of providing a minimum level of protection to underinsured motorists while also preventing double recovery on the part of the insured. Id., 775.

*Hartford Casualty* followed the rationale of *Buell*. In *Hartford Casualty*, the claimant had $600,000 in underinsured motorist coverage at the time she was injured in an accident allegedly caused by two motorists. *Hartford Casualty Ins. Co.* v. *Farrish-LeDuc*, supra, 275 Conn. 751. The claimant's action against one motorist was withdrawn after the case settled for a

total payment of $127,835.30. Id., 752. That payment exhausted that motorist's insurance policy limits, thus allowing the claimant to file a claim for underinsured motorist benefits. Id., 752–53. The claimant's action against the second motorist was dismissed because it had been brought after the statute of limitations expired. Id., 752. Thereafter, the claimant received a $656,581 payment in settlement of a legal malpractice action she brought against the law firm representing her in the dismissed action. Id., 753. In the arbitration of her underinsured motorist claim, the claimant and the insurer agreed that her coverage had been reduced by the underinsured motorist's settlement but disagreed whether the law firm's settlement also reduced coverage. Id. In a subsequent proceeding entertaining motions to vacate and to confirm the arbitration award, the parties reserved the question of law to this court whether the insurer was statutorily entitled to reduce the limits of the underinsured motorist coverage by the $656,581 received in settlement of the claimant's legal malpractice complaint. Id., 751.

This court characterized the issue as "essentially distill[ing] to the question of whether that [settlement] payment constitutes damages 'paid by or on behalf of any person responsible for the injury' within the meaning of [the governing regulation]." Id., 758. In answering that question in the affirmative, the court first determined that the settlement of the legal malpractice claim was "the functional equivalent of a payment from [the motorist's] insurance carrier." Id., 760; see id., 759–60 (reasoning that malpractice claim would have required claimant to prove that she would have recovered damages in dismissed action and that damages from malpractice action were same as those that would have been recovered against motorist had law firm properly pursued negligence action). Accordingly, the court concluded that there was "no logical reason to treat the payments as distinct for purposes of [the regulation]. It is true, of course, that neither [the law firm] nor its professional liability insurance carrier was responsible for the injuries that [the claimant] had sustained as a result of [the motorist's] negligent operation of his vehicle. *Nevertheless, [the law firm] essentially conceded, by virtue of its settlement payments, that it had caused the economic harm that flowed from the accident.* To preclude the [insurer] from reducing the limits of the [claimant's] uninsured/underinsured motorist coverage by the $656,581 in settlement payments that the [claimant] had received from [the law firm's] professional liability insurer would permit the [claimant] to recover twice for the same element of damages, a result that is at odds with the 'time-honored rule that an injured party is entitled to full recovery only once for the harm suffered.' " (Emphasis added.) Id., 760–61. The court bolstered its conclusion with the fact that its resolution of the issue was consistent with

its prior interpretation of the uninsured/underinsured motorist scheme in cases involving third party settlements, specifically discussing the court's analysis in *Buell*. Id., 761–62.

Thus, *Buell* and *Hartford Casualty* collectively stand for two propositions. First, settlement payments received in exchange for the relinquishment of a claim for the damages arising from a motor vehicle accident constitute a permissible reduction of coverage as a payment "by or on behalf of any person responsible for the injury . . . ." Regs., Conn. State Agencies § 38a-334-6 (d) (1) (A). In other words, the meaning of "responsible" includes persons who assume responsibility for the loss by making a voluntary payment. Cf. *Collins* v. *Colonial Penn Ins. Co.*, supra, 257 Conn. 741 ("[w]ithout proof of the negligence of a tortfeasor and without proof of damages from such negligence *or an inference of negligence and damages that prompts the uninsured motorist carrier to settle*, there can never be a recovery of uninsured motorist benefits" [emphasis added]); *Roy* v. *Centennial Ins. Co.*, 171 Conn. 463, 466, 370 A.2d 1011 (1976) (parties agreed that underinsured motorist coverage would be reduced to zero by aggregate settlements from tortfeasors in excess of such coverage if insurance regulation permitting reduction of coverage "by any amount paid on account of the bodily injury either by the uninsured motorist himself or by any other person or organization jointly and severally liable together with the uninsured motorist for the bodily injury" was valid); *Waite* v. *Godfrey*, 106 Cal. App. 3d 760, 768, 163 Cal. Rptr. 881 (1980) ("[a]lthough there was no special finding of [the hit-and-run driver's negligence] made by the trial court, a de facto finding to that effect was obviously made by . . . [the] plaintiff's insurance carrier, as indicated by its payment of $12,000 in settlement of [the] plaintiff's uninsured motorist claim"). The settlement evidences the assumption of financial responsibility for the injury, even if the settling party cannot be deemed legally responsible for that injury by virtue of that payment for other purposes.[2] Second, the cases reflect that, in the multitortfeasor context, coverage is reduced by the aggregate sum of the settlement payments without any relationship to the tortfeasors' proportionate fault in causing the accident.

To the extent that the plaintiff claims that *Buell* was overruled sub silentio by our decision eight years later in *Collins* v. *Colonial Penn Ins. Co.*, supra, 257 Conn. 718, because the two cases cannot be reconciled, she is mistaken. We first point out that *Hartford Casualty*, which relied on *Buell* as support, was decided four years after we issued our decision in *Collins*. More fundamentally, *Collins* is readily distinguishable from *Buell*. *Collins* was a negligence action in which settlement had been reached on behalf of only one of two tortfeasors. See *Collins* v. *Colonial Penn Ins. Co.*, supra, 721. The issue in *Collins* was whether the nonsettling

tortfeasor's statutory right to apportionment was impacted by the fact that the claim against the second tortfeasor, an unidentified hit-and-run motorist, had been settled by the plaintiff's uninsured motorist carrier as a proxy for that motorist. Id. The trial court concluded that, because the plaintiff had settled an uninsured motorist claim, the settlement should be treated as one arising out of a contract action, to which apportionment does not apply. Id., 726. Thus, the trial court permitted the plaintiff to keep the settlement and to recover the entire damages award from the nonsettling tortfeasor. Id. In reversing the trial court's judgment, *Collins* relied on the unremarkable proposition that, following the legislature's rejection of joint and several liability in favor of apportioned liability, a nonsettling party in a tort action has a statutory right to have the trier determine his or her proportionate liability. See id., 727, 729–32 (considering application of General Statutes § 52-572h under plain error doctrine). The court concluded that apportionment applied irrespective of the fact that the uninsured motorist carrier had made the settlement payment because it did so as a surrogate for the unidentified motorist and therefore should be viewed as a joint tortfeasor. Id., 743–44; see id., 743 (underscoring significance of fact that insurer was "brought into the litigation *solely* to litigate the blameworthiness of the unidentified driver" [emphasis in original]); id., 738, 742 (referring to "hybrid nature of uninsured motorist coverage" when insured's liability is predicated on negligence of "phantom" driver). Because the case had to be remanded to determine the nonsettling tortfeasor's proportionate liability, this court expressly declined to address the tortfeasor's claim that it would violate the rule against double recovery to allow the plaintiff to keep the settlement and the damages award. Id., 726. Nonetheless, the court determined that the settlement payment would not directly bear on the tortfeasor's proportionate liability because § 52-572h expressly requires the reduction of damages by a released person's percentage of negligence. Id., 734–35.

It is clear from this discussion that whether a *tortfeasor* has a *statutory* right to pay only his fair share of *damages* for injury he or she has caused in part is an entirely different matter than whether an *insurer* has a *contractual* right to reduce *coverage* as a result of payments tortfeasors have made to the claimant. See *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 817, 695 A.2d 1010 (1997) ("The substance of the cause of action in the first trial was an action in tort; specifically, whether [the tortfeasor] was liable to the plaintiff for the negligent operation of his motor vehicle. An action to recover under an automobile insurance policy, on the other hand, is not an action in tort but, rather, an action in contract."); *Savoie* v. *Prudential Property & Casualty Ins. Co.*, 84 Conn. App. 594, 601–607, 854 A.2d

786 (recognizing distinction for purpose of apportionment), cert. denied, 271 Conn. 932, 859 A.2d 930 (2004); see also *Bovat* v. *Waterbury*, 258 Conn. 574, 601, 783 A.2d 1001 (2001) ("[w]here a joint tortfeasor is entitled to apportionment, settlements are not deducted dollar for dollar from the jury verdict").

The plaintiff misconstrues the import of two statements in *Collins*: (1) that "[a] plaintiff's settlement with one tortfeasor in a multitortfeasor context . . . does not necessarily represent a claimant's fair, just and reasonable damages but, rather, represents, in part, the parties' assessments of the risks of litigation"; *Collins* v. *Colonial Penn Ins. Co.*, supra, 257 Conn. 735; and (2) that "the legislature, in enacting §§ 52-572h and 38a-336, did not intend to create a separate law of damages for uninsured motorist claims different from that which exists for traditional negligence awards." Id., 742. Both statements are correct, but irrelevant to the issue in the present case, in which all tortfeasors are identified and have settled the claims against them. Moreover, a settlement payment may not reflect a full and fair measure of damages, but it undoubtedly serves a compensatory purpose. See *Buell* v. *American Universal Ins. Co.*, supra, 224 Conn. 773 (payment made in settlement of action against alleged tortfeasor "served two purposes—to avoid litigation of the claim against [the alleged tortfeasor] and to compensate [the claimant] for her bodily injuries").

Accordingly, the plaintiff's reliance on the Appellate Court's decision in *Garcia*, in which the Appellate Court viewed the issue as a variant of the one presented in *Collins*, is similarly misplaced. In *Garcia*, the claimant sustained injuries in an accident caused by an identified motorist and an unidentified hit-and-run motorist. *Garcia* v. *ITT Hartford Ins. Co.*, supra, 72 Conn. App. 589. In reverse of the facts in *Collins*, the known tortfeasor settled in an amount that exceeded the uninsured motorist coverage, and the claimant brought an action against the underinsured motorist carrier as a surrogate for the unidentified motorist. Id., 589–90. The Appellate Court recognized that the carrier was "standing in the shoes of the unidentified tortfeasor, whom the [claimant] has not settled with in any amount." Id., 600. The court framed the issue before it as "whether, in a multiple tortfeasor context, the injured party is precluded as a matter of law from recovering under an uninsured motorists policy where she has settled with one tortfeasor for an amount greater than the uninsured motorists coverage against which she is claiming." Id., 594. It viewed *Collins* as "requir[ing], in the multitortfeasor context, a fact finder to apportion the plaintiff's damages and that any setoff apply to only a percentage of the damages rather than to a dollar for dollar reduction." Id., 595. The Appellate Court reasoned that the order in which a party settles or pursues claims should not dictate different outcomes. Id., 599. Therefore, it

determined that the claimant had a right to have a trier of fact apportion the percentage of negligence of the nonsettling party. Id., 598–99.

We construe *Garcia* as simply treating the uninsured motorist carrier as if it were the tortfeasor and applying the rules of apportionment that apply in the multitort-feasor context. Although the Appellate Court implicitly questioned whether *Collins* might impact this court's earlier holding in *Buell*, it nonetheless recognized that the cases were inapposite. Id., 600. Indeed, in a subsequent case decided by a panel comprised of two of the three members of the panel in *Garcia*, the Appellate Court expressly recognized that the apportionment analysis in *Garcia* had no bearing on a case in which a claimant seeks underinsured motorist benefits after all tortfeasors have settled. See *Savoie* v. *Prudential Property & Casualty Ins. Co.*, supra, 84 Conn. App. 601–607 (holding that recovery barred when payments from multiple tortfeasors exceeded coverage).[3]

Ultimately, the plaintiff has confused her right to recover damages with the right to recover the minimum guaranteed by underinsured motorist coverage. When the plaintiff settled her claims with both tortfeasors, she necessarily relinquished her right to recover damages. All that was left was her right to recover insurance benefits, if any coverage remained after a reduction for the settlement payments. To the extent that the plaintiff complains that she has not been fairly compensated for the tortfeasors' negligence, any such deficiency arises by virtue of her tactical decision to settle both claims and the resources of the tortfeasors. With respect to insurance benefits, the plaintiff has gotten exactly what Dufresne bargained for—a guarantee that she could recover up to $100,000 for an injury or death resulting from an accident caused in whole or in part by an underinsured motorist. Neither the regulatory scheme nor her policy required more.[4]

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] The plaintiff does not explain why her coverage can be reduced by her settlement payment from Anton without a finding of fault and proportionate responsibility, whereas her settlement payment from Lombardi cannot. It is unclear, therefore, whether she makes this distinction because her complaint alleges negligence only by Anton or because she construes the policy limitation and the related regulation as requiring proof of responsibility only as to someone other than the underinsured motorist. In any event, we conclude that this distinction is not material to our analysis. To the extent, however, that the plaintiff's claim is predicated on the notion that there is a separate limit of underinsured motorist liability for each tortfeasor, the discussion that follows indicates that the authority is to the contrary.

[2] We note that, in *Todd* v. *Nationwide Mutual Ins. Co.*, 121 Conn. App. 597, 604, 999 A.2d 761, cert. denied, 297 Conn. 929, 998 A.2d 1196 (2010), the Appellate Court concluded that the claimant's acceptance of a settlement payment from a party alleged to be responsible for the tortfeasor's liability did not, as a matter of law, establish that party's liability to the claimant for purposes of the claimant's recovery under her own underinsured motorist conversion coverage. Assuming, without deciding, that this determination is correct, we find *Todd* distinguishable from the matter before us. In *Todd*, the question was whether the claimant had satisfied the statutorily mandated

precondition to coverage, namely, exhaustion of all insurance policies applicable at the time of the accident. Id., 600–601. In the present case, the issue is not whether the plaintiff is entitled to bring an underinsured motorist action, but whether her coverage in such an action is reduced by settlement payments. The latter implicates the well settled rule barring double recovery; see *Haynes* v. *Yale-New Haven Hospital*, supra, 243 Conn. 22 and n.6; a concern not implicated in *Todd*. Indeed, *Todd* makes no mention of *Savoie* v. *Prudential Property & Casualty Ins. Co.*, 84 Conn. App. 594, 601–607, 854 A.2d 786, cert. denied, 271 Conn. 932, 859 A.2d 930 (2004), which held that settlements are payments made by a person "responsible for the injury" within the meaning of § 38a-334-6 (d) (1) of the Regulations of Connecticut State Agencies.

[3] A treatise often cited by this court has criticized *Garcia* for failing to clearly distinguish between a reduction of policy limits (the issue in the present case) and a reduction of damages, and has suggested that "*Savoie* emasculated, if not overruled, the import of *Garcia* in the context wherein reduction of policy limits (not damages) is sought." J. Berk & M. Jainchill, Connecticut Law of Uninsured and Underinsured Motorist Coverage (4th Ed. 2010) § 4.9.D, pp. 468–70 n.100. We have no occasion in the present case to clarify or otherwise comment on the merits of *Garcia*'s reasoning, as we are not confronted with an unidentified motorist on whose behalf no settlement has been reached.

[4] This court previously held that an underinsured motorist carrier was not bound by the liability and damages determination obtained by its insured in an action against the tortfeasor. See *Mazziotti* v. *Allstate Ins. Co.*, supra, 240 Conn. 810–19 (determining that doctrine of collateral estoppel did not apply). Nothing in this opinion should be construed to indicate anything to the contrary.