EXECUTIVE SERVICES, INC., ET AL. *v.* JADWIGA H. KARWOWSKI ET AL.
(AC 23686)

West, McLachlan and Peters, Js.

Argued September 12—officially released November 4, 2003

*Martin M. Rizzi,* for the appellants (defendants).

*Leonard M. Isaac,* with whom, on the brief, was *S. Dave Vatti,* for the appellees (plaintiffs).

*Opinion*

PETERS, J. For a fee, public insurance adjusters assist property owners in receiving insurance payments for insured fire losses. Section 38a-788-6 of the Regulations of Connecticut State Agencies, which determines the fee that insurance adjusters may charge, permits them to recover a fixed percentage "of the amount of the loss when adjusted with the Insurance Companies or otherwise recovered . . . ."[1] The issue in this case

[1] Section 38a-788-6 of the Regulations of Connecticut State Agencies provides in relevant part: "Form of contract [Formerly Sec. 38-769-6.] No public adjuster shall enter into an employment contract except in conformity with this regulation. There shall be a true copy of the employment contract which shall be given to the client at the time the contract is signed. The contract and copy(ies) of the contract . . . shall state: (1) On side one: INFORMATION ABOUT YOUR PUBLIC ADJUSTER EMPLOYMENT CONTRACT YOUR LEGAL RIGHTS: *Cancellation*: You may cancel this contract by notifying us at the address shown on the other side of this page . . . . *Settlement offer*: We shall forward to you any written settlement offer from the insurance company. *Fee*: Our services are available for a fee to be paid by you. We cannot charge you a fee greater than ten percent (10%) of the actual or final settlement of the loss covered by this contract nor can we rebate any part of the fee specified in this Employment Contract. *Copy of the contract*: We must give you a true copy of this Employment Contract at the time you sign it. . . . We must . . . inform you that we do not represent any insurance company or any insurance company adjusting firm. (2) On side two: . . . To the Interested Insurance Companies and Others Whom it May Concern: I/we retain _____ (name of public adjuster) to act as my/our public adjuster(s) and to advise and assist in the adjustment and settlement of my/our _____ (type) loss at _____ (address) which occurred on or about _____ (date). In consideration for these services, I/we hereby assign out of the monies due or to become due from said Insurance Companies on account of the said loss a sum equivalent to _____% percent of the

is whether the amount "otherwise recovered" is the *gross* amount of the insured's recovery or the *net* amount after an insured has paid attorney's fees and mortgage debts. The trial court concluded that the adjuster was entitled to recover a percentage of the gross amount. We agree.

The plaintiffs, public insurance adjusters Executive Services, Inc., and Louis E. Ranciato, filed a multicount complaint alleging breach of contract by the defendants, Jadwiga H. Karwowski and Mieczyslaw Karwowski, arising out of the defendants' failure to pay the fees specified in a contract for fire adjustment services. The defendants denied their liability and filed special defenses as well as a claim for setoff. After a stipulation of facts, the trial court rendered judgment in favor of the plaintiffs, from which the defendants have appealed. Because the only issue before us is a question of the proper interpretation of a state regulation, an issue of law, our review of the defendants' appellate claim is plenary. See *Rudy's Limousine Service, Inc.* v. *Dept. of Transportation*, 78 Conn. App. 80, 84, 826 A.2d 1161 (2003).

The court's memorandum of decision and the stipulation of the parties state the relevant facts. The defendant Jadwiga Karwowski contracted with the plaintiffs after three fires on September 26, October 5 and October 24, 1994, that destroyed her property at 73-75 Broad Street in New Britain. The property was insured by the Travelers Insurance Company (Travelers), which refused to pay the face amount of the policy because of its suspicion that the defendant Mieczyslaw Karwowski might have committed arson.

The plaintiffs' claim arose out of litigation between the parties that resulted in Travelers paying a stipulated

---

amount of the loss when adjusted with the Insurance Companies or otherwise recovered . . . ." (Emphasis in original.) The text of the contract was exactly the same as that specified in the regulation.

judgment of $1,054,138 for the fire loss.[2] Part of that judgment reflected Travelers' initial payment of $50,000 to the plaintiffs, as well as payment of $104,138.17 to mortgagees and recovery of $20,290.23 at a tax foreclosure sale of the property. Accordingly, Travelers paid the defendant Jadwiga Karwowski the net amount of $900,000, of which $300,000 was paid to her attorney as a fee for his services.

In her written contract with the plaintiffs, the defendant Jadwiga Karwowski agreed to pay the plaintiffs a fee of 5 percent of the amount of her recovery from her fire loss. She tendered the plaintiffs a check for $32,500, calculated as 5 percent of the $600,000 she had retained after paying her attorney and 5 percent of the $50,000 advance she had received when she first presented her claim to Travelers.

The plaintiffs assisted the defendants in recovering an initial adjustment of $50,000 and subsequently assisted in the litigation that resulted in their receiving a favorable stipulated judgment. During the jury trial, the plaintiffs Louis Ranciato and John Ranciato testified as expert witnesses in support of the successful claim of the defendant Jadwiga Karwowski against Travelers. The plaintiffs provided the proof of loss figures that were the basis of her claim. The plaintiff Louis Ranciato also assisted in the resolution of criminal proceedings charging the defendant Mieczyslaw Karwowski with having committed arson. Although the value of these services has not been quantified, the record demonstrates that the plaintiffs contributed significantly to the defendants' recovery from Travelers.

The legal issue that confronts us is more easily stated than resolved. The insurance commissioner requires

---

[2] In the underlying litigation, Jadwiga Karwowski recovered $1,142,172.48 from Travelers, and Travelers recovered $133,847.94 from Mieczyslaw Karwowski. As part of the stipulated judgment, Travelers issued a general release to Mieczyslaw Karwowski.

insurance adjusters to use a contract that states: "In consideration for these services, I/we hereby assign out of the monies due or to become due from said Insurance Companies on account of the said loss a sum equivalent to ____% percent of the amount of the loss when adjusted with the Insurance Companies or otherwise recovered . . . ." Regs., Conn. State Agencies § 38a-788-6. All we have before us is the text of the regulation designating this contract language. Did the insurance commissioner intend "otherwise recovered" to mean the gross recovery received after litigation, in contrast with the amount "when adjusted," or did he intend to limit recovery after litigation to the net amount received by the insured after deduction of costs and fees? The only thing that is clear is that the text is ambiguous. There are no appellate decisions construing the text, and the trial courts that have considered the matter have disagreed about its meaning.[3]

The defendants' argument for deduction of costs and fees from sums "otherwise recovered" proceeds from the unchallenged premise that legislation should be construed to produce a rational and sensible result. See, e.g., *Turner* v. *Turner*, 219 Conn. 703, 713, 595 A.2d

---

[3] In two cases, the court, *Hon. Anthony V. DeMayo*, judge trial referee, concluded that General Statutes § 38a-788-6 was enacted for the benefit of insureds and that "otherwise recovered" should therefore be construed so as to limit the fees of insurance adjusters. *Biller Associates* v. *Route 156 Realty Co.*, Superior Court, judicial district of New Haven, Docket No. 348897 (October 22, 1996) (18 Conn. L. Rptr. 132, 134), rev'd on other grounds, 52 Conn. App. 18, 725 A.2d 398 (1999), aff'd, 252 Conn. 400, 746 A.2d 785 (2000); *Biller Associates* v. *Peterken*, Superior Court, judicial district of New Haven, Docket No. 354173 (October 10, 1997), aff'd, 58 Conn. App. 8, 751 A.2d 836, cert. granted on other grounds, 254 Conn. 914, 759 A.2d 506 (2000). In another case, the court, *Hon. Howard J. Moraghan*, judge trial referee, construed the regulation to permit an adjuster to recover a percentage of the insured's recovery measured by a proof of loss even though the adjuster had been discharged. *Malis, Inc.* v. *Commercial·Union Ins. Co.*, Superior Court, judicial district of Danbury, Docket No. 330811 (December 12, 2001) (31 Conn. L. Rptr. 93).

297 (1991). They maintain that the text should be read to protect those confronted by fire losses from over-reaching by knowledgeable insurance adjusters. This case, however, does not present any evidence of unconscionable conduct on the part of the plaintiffs.[4] On the contrary, their vigorous efforts on behalf of both defendants manifestly protected the defendants' interests in a proper recovery. It is reasonable to read the regulation as having been intended to encourage just such efforts on behalf of insurance claimants.

The defendants also argue that it would be unfair to award the plaintiffs a percentage of an insurance award that did not reflect the cost of the counsel fees incurred by the defendants. The defendants observe that the plaintiffs have not challenged the reasonableness of the payment of $300,000 to the defendants' attorney. The defendants further argue that, although the plaintiffs' services contributed to the defendants' recovery, payment of 5 percent of $600,000, the net recovery from the litigation, is sufficient compensation for their contributions. That argument assumes the propriety of deducting mortgage payments from the amount that is "otherwise recovered." We cannot, however, conceive of the basis for that assumption. The money that Travelers paid to discharge the defendant Jadwiga Karwowski's mortgage debt was a benefit to her that she retained only because of the stipulated judgment.

In our view, the text of the regulation is more plausibly interpreted to support the plaintiffs' analysis of the meaning of "otherwise recovered." The plaintiffs properly advise us to read this phrase in light of the entirety of the sentence in which it appears. The sentence begins: "To the Interested Insurance Companies and Others Whom it May Concern: I/we retain . . . (name

---

[4] We therefore need not consider the proper outcome of a case in which the conduct of the public insurance adjuster was unconscionable.

of public adjuster) to act as my/our public adjuster(s) and to advise and assist in the adjustment and settlement of my/our . . . loss at . . . (address) which occurred on or about . . . (date). In consideration for these services, I/we hereby assign out of the monies due or to become due from said Insurance Companies on account of the said loss a sum equivalent to ____% percent of the amount of the loss when adjusted with the Insurance Companies or otherwise recovered . . . ." Regs., Conn. State Agencies, § 38a-788-6. The phrase "otherwise recovered" appears, therefore, not in a description of the contract obligations of the plaintiffs and the defendants but in instructions to Travelers. As the plaintiffs further observe, the assignment directs Travelers whom to pay and when, i.e., "when adjusted with the Insurance Companies or otherwise recovered . . . ." In this context, the phrase "otherwise recovered" does not address the question of whether the recovery should be net or gross of the insured's litigation costs.

The plaintiffs' interpretation of § 38a-788-6 finds additional support in another part of the regulation. The parties apparently have deemed it irrelevant that the regulation expressly defines the fees that an insurance adjuster may charge. The regulation requires a contract between an adjuster and an insured to state: "We cannot charge you a fee greater than ten percent (10%) *of the actual or final settlement* of the loss covered by this contract nor can we rebate any part of the fee specified in this Employment Contract. . . ." (Emphasis added.)[5] The phrase "actual or final settlement" indicates that the amount "otherwise recovered" is the gross amount that an insurer must pay for an insured loss.

---

[5] In this case, of course, the fee was set at 5 percent rather than 10 percent. Although at trial the plaintiffs claimed that an oral agreement entitled them to more than 5 percent, that claim was rejected by the court and has not been pursued on appeal.

In the absence of guidance from the insurance commissioner, we conclude that the court properly interpreted the contract between the parties. As mandated by § 38a-788-6, an insurance adjuster may recover a fee of no more than 10 percent of the total amount that an insurer is obligated to pay under a policy of fire insurance.

The judgment is affirmed.

In this opinion the other judges concurred.