CATHY SAVOIE, ADMINISTRATRIX (ESTATE
OF JOHN PAUL SAVOIE) *v.* PRUDENTIAL
PROPERTY AND CASUALTY
INSURANCE COMPANY
(AC 24429)

Foti, Dranginis and Dupont, Js.

Argued April 29—officially released August 24, 2004

*Paul E. Pollock*, for the appellant (plaintiff).

*Frederick M. Vollono*, for the appellee (defendant).

*Opinion*

FOTI, J. The plaintiff, Cathy Savoie, administratrix of the estate of John Paul Savoie, appeals from the judgment of the trial court denying her application to vacate an arbitration award in favor of the defendant, Prudential Property & Casualty Insurance Company. The dispute concerns underinsured motorist benefits to which the plaintiff claims she is entitled under a policy issued to the decedent by the defendant. On appeal, the plaintiff claims that the court improperly (1) failed to review de novo the arbitration award and (2) held that the defendant was entitled to set off the amount that the plaintiff had recovered from the joint

tortfeasors in this case. We affirm the judgment of the trial court.

The parties have stipulated to the facts underlying the plaintiff's appeal. On November 17, 1992, the plaintiff's husband, John Paul Savoie, was killed in an automobile accident caused by the negligence of Richard Courville, who was operating a motor vehicle owned by Rita Sara, and Michael Chueka, who was operating a motor vehicle owned by the Fairfield County Tobacco and Candy Company (Fairfield). The plaintiff, acting both individually and in the capacity of administratrix of her husband's estate, settled liability claims against those tortfeasors in the total amount of $400,000. Each tortfeasor was 50 percent liable for causing the decedent's death, and the total damages sustained by the plaintiff and the estate exceed $1 million. The total liability insurance coverage available to Courville and Sara was $150,000, and that amount was paid to the estate. The insurer for Chueka and Fairfield paid $100,000 to the estate and $150,000 to the plaintiff individually.

At the time of the accident, the decedent was insured under an automobile liability insurance policy that he purchased from the defendant. The policy included a provision for $300,000 in underinsured motorist benefits per accident. After settling claims with the tortfeasors, the plaintiff sought to recover $150,000 from the defendant under that provision. The plaintiff claimed that she was entitled to recover underinsured benefits because she recovered to the extent of Courville's insurance coverage. The defendant claimed that it was entitled to set off the amount that the plaintiff also recovered from Chueka and Fairfield. The plaintiff claimed that under the principle of apportionment of liability, the defendant could not set off the $250,000 that she recovered from Chueka and Fairfield, but could only set off the $150,000 paid on Courville's behalf. The parties, having stipulated to the relevant facts, submit-

ted their claim dispute to a panel of three arbitrators in accordance with the terms of the policy.

The arbitrators, with one arbitrator dissenting, found in the defendant's favor. They ruled that the defendant was entitled to set off the $400,000 in payments made to the plaintiff on behalf of *both* of the tortfeasors, thereby exhausting the plaintiff's policy limit of $300,000 in underinsured motorist benefits. The plaintiff filed an application in the Superior Court to vacate the arbitrators' award. The plaintiff claimed that "the majority of the arbitrators erred as a matter of law by reducing the underinsured motorist coverage available to the plaintiff by the payment made on behalf of Michael Chueka, an apportionment defendant." The court conducted a hearing and, being in agreement with the arbitrators' decision, issued a memorandum of decision denying the plaintiff's application. We will set forth additional relevant facts in the context of the plaintiff's claims.

I

The plaintiff first claims that the court improperly failed to review the arbitration award de novo. We agree.

The court, in its memorandum of decision, began its analysis by reiterating the usual rule applicable to a mutual agreement to arbitrate, which is that judicial review is limited and a resulting award is not reviewable for errors of law or fact. The court noted that the plaintiff had not alleged that any of the four defects enumerated in General Statutes § 52-418 (a), on the bases of which the court may vacate an award, were present. The court further noted that the plaintiff had not claimed that the arbitrators had either ruled on the constitutionality of a statute or violated a clear public policy. The court stated that it would address the issue "evidently" raised by the plaintiff, which was that the

arbitrators had "manifestly disregarded" the law in reaching their award, and reviewed the award accordingly.[1] The court thereafter concluded that "[n]othing suggests the arbitrators here chose to ignore applicable law; in fact, they carefully considered the law urged upon them by the [plaintiff]."

The plaintiff argues that the court employed an "erroneous standard of review" to her claim. The issue of whether the court employed the proper standard of review is a legal one, to which we will afford plenary review.

"The standard of review for arbitration awards is determined by whether the arbitration was compulsory or voluntary. [Our Supreme Court] recognized the fundamental differences between voluntary and compulsory arbitration in *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 190–91, 530 A.2d 171 (1987). The court concluded therein that 'where judicial review of compulsory arbitration proceedings required by [General Statutes § 38a-336 (c)] is undertaken . . . the reviewing court must conduct a de novo review of the interpretation and application of the law by the arbitrators. The court is not bound by the limitations contractually placed on the extent of its review as in voluntary arbitration proceedings.' Id., 191. A reviewing court therefore must conduct a de novo review of the arbitrators' decision on coverage issues because such issues are subject to compulsory arbitration. *Quigley-Dodd* v. *General Accident Ins. Co. of America*, 256 Conn. 225,

---

[1] The court, citing *Garrity* v. *McCaskey*, 223 Conn. 1, 9, 612 A.2d 742 (1992), stated that it would vacate the award only if the plaintiff demonstrated that all of the following conditions were present: "(1) the [alleged] error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the arbitrator appreciated the existence of clearly governing legal principles but decided to ignore [such principles]; and (3) the governing law alleged to have been ignored by the arbitrator is well-defined, explicit and clearly applicable."

234, 772 A.2d 577 (2001)."[2] *Travelers Ins. Co.* v. *Pondi-Salik,* 262 Conn. 746, 751–52, 817 A.2d 663 (2003). If the issue in the present case is one of coverage, the arbitration is compulsory and, therefore, subject to de novo review.

Coverage issues concern "a limitation on the recovery of damages *from the insurer*" and require a determination of "the respective rights and obligations of the parties to a contract of insurance, *as such.*" (Emphasis in original.) *Quigley-Dodd* v. *General Accident Ins. Co. of America,* supra, 256 Conn. 239. In contrast, issues of damages concern "the measure of damages that can be recovered *from the tortfeasor* . . . ." (Emphasis in original.) Id.

The narrow issue was whether the defendant was entitled to a setoff for payments made on behalf of both Courville and Chueka. The issue did not concern the measure of damages that the plaintiff could recover from the tortfeasors. Instead, the issue of the defendant's entitlement to set off the payments against the amount it owed the plaintiff uniquely concerned the parties' rights and obligations under the contract of insurance. As such, the issue of setoff was a coverage issue subject to compulsory arbitration pursuant to § 38a-336 (c), and the law is clear that a reviewing court must conduct a de novo review of an award concerning such an issue. See *American Universal Ins. Co.* v. *Del-Greco,* supra, 205 Conn. 191–99 (reviewing de novo claim that insurer entitled to set off amount owed to claimant under underinsured motorist policy by amount paid to claimant under insurance policy issued to dram shop). The court here employed an incorrect standard of review.

[2] General Statutes § 38a-336 (c) provides in relevant part: "Each automobile insurance policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding. . . ."

Despite our conclusion with regard to the standard of review, we conclude that we need not remand the case to the trial court for a new trial. The parties have stipulated to all of the relevant facts. This court must review de novo the legal conclusions underlying the arbitrators' award, thereby affording the parties the level of review that is warranted.[3]

II

We now review de novo the substantive issue resolved by the arbitrators, which was the subject of the plaintiff's application to vacate, namely, whether the defendant was entitled to set off the amount that the plaintiff had recovered from the joint tortfeasors in this case. We conclude that the arbitrators properly determined that the defendant was so entitled.

General Statutes § 38a-336 (b) provides in relevant part: "An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured and underinsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured and underinsured motorist coverage, exceed the limits of the insured's uninsured and underinsured motorist coverage. . . ."

An insurance policy may provide for a reduction in the policy's stated limits to the extent that an insured has been compensated from other sources for damages sustained during a compensable accident. "The limit of the insurer's liability may not be less than the applicable

---

[3] In briefs submitted to this court, both parties agreed that if we hold that the court employed an incorrect standard of review, we may nonetheless resolve the issue raised before the trial court.

limits for bodily injury liability specified in subsection (a) of section 14-112 of the general statutes, except that the policy may provide for the reduction of limits to the extent that damages have been . . . paid by or on behalf of any person responsible for the injury . . . paid or are payable under any workers' compensation law, or . . . paid under the policy in settlement of a liability claim." Regs., Conn. State Agencies § 38a-334-6 (d) (1).

Part five of the policy issued by the defendant pertains to underinsured motorist benefits. That section, entitled "HOW WE WILL SETTLE A CLAIM," provides in relevant part: "The limit stated [for underinsured motorist benefits] is the limit of our liability less all amounts recovered for all damages, including damages for care or loss of services, arising out of bodily injury to one person as a result of any one accident." Another provision in part five of the policy, in a section subtitled "PAYMENTS REDUCED," provides that "[p]ayments will be reduced by any amount payable by persons responsible for the accident. Payments under this part will also be reduced by any amount payable under this policy or by other sources."

We afford those provisions their natural and ordinary meaning. See *Pacific Indemnity Ins. Co.* v. *Aetna Casualty & Surety Co.*, 240 Conn. 26, 29–30, 688 A.2d 319 (1997). We agree with the defendant that under the unambiguous terms of the policy and the uncontested facts of this case, it was entitled to set off the payments that the plaintiff had received on behalf of both of the tortfeasors because they were persons "responsible for the accident." The payments received by the plaintiff totaled $400,000, and the defendant properly reduced its $300,000 limit of liability to zero by reason of those payments. Under the policy's explicit terms, the underinsured liability limit applied to the single accident

underlying the plaintiff's claim, not to each of the joint tortfeasors responsible for the accident.

Our holding accords with "the fundamental principle that the purpose of underinsured motorist insurance is to place the insured in the *same* position as, but *no better* position than, the insured would have been had the underinsured tortfeasor been fully insured. The public policy established by the [under]insured motorist statute is that every insured is entitled to recover for the damages he or she would have been able to recover if the [under]insured motorist had maintained [an adequate] policy of liability insurance." (Emphasis in original; internal quotation marks omitted.) *Haynes* v. *Yale-New Haven Hospital*, 243 Conn. 17, 27, 699 A.2d 964 (1997). Section 38a-336 affords a minimum level of protection for those insured under automobile liability insurance policies. "In the underinsured motorist coverage context, the minimum amount of compensation that the insured is entitled to receive is equivalent to the amount of underinsured motorist protection that the insured carried." *Vitti* v. *Allstate Ins. Co.*, 245 Conn. 169, 185, 713 A.2d 1269 (1998). Here, the plaintiff has already recovered in excess of that amount as compensation for the accident.

The plaintiff argues, as she did before the trial court, that a different result is warranted not by a different interpretation of the policy's terms, but by the application of apportionment principles, set forth in General Statutes § 52-572h, to this case. In that regard, she argues that *Collins* v. *Colonial Penn Ins. Co.*, 257 Conn. 718, 778 A.2d 899 (2001) (en banc), and *Garcia* v. *ITT Hartford Ins. Co.*, 72 Conn. App. 588, 805 A.2d 779 (2002), "have applied the theory of apportionment to uninsured motorists cases and are authority for applying that theory in the present case." We conclude that the plaintiff's reliance on *Collins* and *Garcia* is misplaced because those cases concerned apportion-

ment, not setoff, and damages to be found by the fact finder, rather than damages agreed to by settlement.

The plaintiff in *Collins* alleged that she had sustained injuries caused by the negligence of two other operators in a chain reaction collision involving three automobiles. *Collins* v. *Colonial Penn Ins. Co.*, supra, 257 Conn. 721. She brought an action against the identified operator of one of the vehicles as well as her uninsured motorists carrier as a surrogate for an unidentified operator involved in the collision. Id. After settling her claim against her insurer, the plaintiff proceeded to trial against the remaining identified operator, the defendant. Id. At trial, the defendant asked the court to instruct the jury, and to provide verdict forms reflecting, that damages and negligence should be apportioned between him and the insurer pursuant to § 52-572h. Id.

The trial court in *Collins* declined the defendant's request, and the jury delivered a verdict in the plaintiff's favor. Id., 724–25. On appeal, our Supreme Court held that the trial court improperly had refused to instruct the jury to apportion liability between the identified operator and the insurer. Id., 739. The court reasoned that because the insurer was acting as a surrogate for the unidentified operator, the trial court should have instructed the jury to treat the settlement proceeds paid by the insurer on behalf of the unidentified operator as payments by a joint tortfeasor. Id., 734. The court recognized a distinction between a jury award and a settlement, stating that "[a] plaintiff's settlement with one tortfeasor in a multitortfeasor context . . . does not necessarily represent a claimant's fair, just and reasonable damages but, rather, represents, in part, the parties' assessments of the risks of litigation." Id., 735. The court went on to note that under § 52-572h (n), a plaintiff is entitled to keep any proceeds from a settlement with one of several tortfeasors, but that an award against a remaining tortfeasor should be reduced by

the percentage of liability attributable to the settling tortfeasor. Id., 734–35.

Accordingly, our Supreme Court held that the trial court should have instructed the jury to assess the percentage of negligence and portion of liability for which the insurer was responsible and to reduce any jury award against the defendant by such percentage. Id., 744. The court stated that "it would be inequitable and contrary to the spirit underlying § 52-572h, to allow a plaintiff who does have uninsured motorist coverage and has collected an amount pursuant to a settlement in an automobile accident involving multiple tortfeasors, to deny [the principle] that each individual tortfeasor pay its fair share or portion of damages sustained." Id., 743. The court went on to state that "in this case there should be no substantive difference for apportionment purposes merely because the other tortfeasor is unidentified, so long as the underinsured carrier is named in the complaint to act as the unidentified driver's surrogate." Id., 743–44.

In *Garcia*, this court addressed a similar apportionment issue. The plaintiff passenger in *Garcia* also claimed that she had sustained damages in an accident that involved three cars that was caused by the negligence of two of the operators. *Garcia* v. *ITT Hartford Ins. Co.*, supra, 72 Conn. App. 589–90. The incident occurred when the unidentified operator of the automobile traveling ahead of the plaintiff's car made a sharp left turn. Id., 589. A vehicle driven by an identified operator that was traveling in the opposite direction swerved into the plaintiff's lane, colliding with the vehicle in which she was riding. Id. The plaintiff settled a claim against the identified operator who had swerved into her lane. Id., 590. The plaintiff, under the terms of the uninsured motorist policy covering the driver of the vehicle in which the plaintiff had been riding, thereafter brought an action against the driver's insurer as a surro-

gate for the unidentified operator of the automobile that had been traveling ahead of the vehicle in which the plaintiff had been riding. Id.

The insurer filed a motion for summary judgment, claiming, inter alia, that the action failed as a matter of law because the plaintiff's $100,000 settlement with the identified operator of the vehicle that collided with her vehicle set off the $50,000 uninsured motorist policy that was held by the driver of the plaintiff's vehicle. Id. The trial court agreed, ruling that the settlement effectively reduced to zero the driver's coverage with the insured. Id., 591. On appeal, this court was guided by *Collins* and concluded that the trial court improperly rendered judgment as a matter of law because the issue required a fact finder's determination of damages, and the respective negligence of the identified and unidentified operators. Id., 598–99. The court stated that "[a]ny payment by the defendant [insurer] would be predicated on a finding of culpability and should be reduced proportionately by the percentage of unidentified driver's fault." Id., 599. The court also stated that *Collins* "requires, in the multitortfeasor context, a fact finder to apportion the plaintiff's damages and that any setoff apply to only a percentage of the damages rather than to a dollar for dollar reduction." Id., 595.

Neither *Collins* nor *Garcia* help the plaintiff's case because they do not relate to whether an insurer, who is not being sued as a surrogate for a joint tortfeasor, is entitled, by virtue of specific policy terms, to set off payments received by a claimant from one or more joint tortfeasors. The issues in *Collins* and *Garcia* concerned the effect of a settlement by one joint tortfeasor on the liability of another joint tortfeasor and, in each of those cases, the insurer was a surrogate for a joint tortfeasor. Unlike the situations in those cases, there is no concern here that either of the tortfeasors is escaping liability, or incurring more liability, simply because a joint tort-

feasor has first made payment to the plaintiff in settlement of a claim. The issue here does not concern the apportionment of the liability of either of the tortfeasors, but the obligation, pursuant to an insurance policy, of an underinsured motorist insurance provider to its insured. The insurer's role in this case is distinct from the role of the insurers in *Collins* and *Garcia*.

The plaintiff argues: "In the present case, if the [plaintiff] had chosen to go to trial against Chueka after having settled with Courville, the jury would have apportioned liability as between Chueka and Courville, and Chueka would have obtained the benefit of Courville's percentage of negligence as a reduction in the amount of the award against him. Likewise, if the settlement had first been with Chueka and then a trial as to Courville, the jury would have apportioned liability against Chueka, and Courville would have received the benefit of the percentage of Chueka's negligence as a reduction in the award against him. In neither of [those] situations would the amount of the settlement [have] been used to reduce the award to the plaintiff." That part of the plaintiff's argument is accurate. The amount of the settlement with Chueka would not have reduced an award against Courville. Rather, the percentage of liability attributable to Chueka would have reduced an award rendered against Courville. That argument, however, is hypothetical. The plaintiff did not go to trial against either of the joint tortfeasors here. She settled claims with them, apportioned their liability and now seeks to recover underinsured motorist benefits from her insurer.

The plaintiff further argues: "[The defendant's] obligation is to pay those damages for which the underinsured motorist (Courville) would be liable. Courville would not have been entitled to obtain a set off of the amount paid by Chueka and neither is [the defendant.] Courville would be entitled to have the liability appor-

tioned and so is [the defendant.]" The plaintiff notes that the parties have stipulated that her damages exceed $1 million. She argues that had the arbitrators and the court properly applied apportionment principles to this case, "Courville would have been responsible for at least $500,000 in damages" and that the defendant would have been "obligated to pay its limits of $300,000 less the payment from Courville's carrier [in the amount of] $150,000."

The plaintiff's argument in that regard is flawed. The defendant's obligation to pay for any damages caused by Courville is limited by the terms of the policy, which, as we have noted, contains a provision enabling the defendant to set off amounts recovered by the plaintiff from persons responsible for the accident. There are no factual issues concerning the plaintiff's damages or the percentage of negligence attributable to either of the identified tortfeasors in this case. The plaintiff's ability to recover against the defendant is affected not by any issue of apportionment, but by the terms of her policy.

Further, by arguing that the defendant is obligated to pay her up to the policy's limit, less the payment from Courville's insurer, for the $500,000 in damages caused by Courville, the plaintiff implies that a separate limit of underinsured motorist liability existed with regard to each of the two joint tortfeasors. That is not the case. The policy specifically states that the underinsured motorist limit applies to damages "arising . . . as a result of *any one accident*." (Emphasis added.) The undisputed fact is that the plaintiff already has recovered in excess of her policy limit from a person or persons "responsible for the accident." The defendant is entitled to judgment in its favor.

The judgment is affirmed.

In this opinion the other judges concurred.