MARGARET JACARUSO *v.* RICHARD F. LEBSKI
(AC 30150)

Bishop, Harper and Foti, Js.

---

Argued September 2—officially released December 1, 2009

*Harold L. Rosnick*, for the appellant (plaintiff).

*Miles N. Esty*, with whom, on the brief, was *Robert N. Reed*, for the appellee (defendant Nationwide Mutual Insurance Company).

*Opinion*

FOTI, J. This appeal arises from an action seeking recovery pursuant to the uninsured-underinsured motorist provisions of an automobile insurance policy (policy) issued by the defendant Nationwide Mutual Insurance Company[1] to the plaintiff, Margaret Jacaruso. Jacaruso appeals from the judgment of the trial court granting the defendant's motion for summary judgment and denying her cross motion for summary judgment. The court concluded that there were no genuine issues of material fact and that the defendant was entitled to judgment as a matter of law because under the clear and unambiguous language of the policy, there were no uninsured-underinsured motorist benefits available to Jacaruso under the circumstances. On appeal, Jacaruso contends that the court improperly determined that

---

[1] Prior to the filing of the motions for summary judgment at issue in this appeal by the plaintiff Margaret Jacaruso, the court, *Doherty, J.*, granted her motion to implead Nationwide Mutual Insurance Company as a defendant. Jacaruso brought her action initially against the defendant Richard F. Lebski; however, because he was not a party to the motions for summary judgment that are the subject of this appeal, we refer in this opinion only to Nationwide Mutual Insurance Company as the defendant.

the monetary limits of the uninsured-underinsured motorist coverage had been reduced by amounts paid to a third party under the same policy's liability and umbrella coverage. We affirm the judgment of the trial court.

The following stipulated facts and procedural history are relevant to our resolution of Jacaruso's appeal. On March 13, 2004, a vehicle operated by Richard F. Lebski collided with a vehicle operated by Jacaruso. Beatrice Picone was a passenger in Jacaruso's vehicle. Both Picone and Jacaruso sustained physical injuries and other damages as a result of the accident. Both Picone and Jacaruso also filed legal actions against Lebski, each alleging that Lebski's negligence caused their injuries. At the time of the collision, Lebski was insured under a liability policy with Geico. That policy had recovery limits for bodily injury of $50,000 per person and $100,000 per occurrence. Geico paid both Jacaruso and Picone $50,000 each and thereby exhausted the limits of Lebski's insurance coverage.

In her legal action against Lebski, Picone also named Jacaruso in this appeal as a defendant. Picone alleged that Jacaruso's negligence was the cause of Picone's injuries. See *Picone* v. *Lebski*, Superior Court, judicial district of Fairfield, Docket No. CV-04-4001685-S (August 3, 2005) (39 Conn. L. Rptr. 735). Jacaruso, at the time of the accident, was insured under an automobile liability policy issued by the defendant in this appeal. The defendant paid $400,000 to Picone to settle her claim against Jacaruso. That payment was made partially under the liability portion and partially under the umbrella insurance coverage of Jacaruso's automobile insurance policy. Jacaruso then successfully filed a motion to implead the defendant in her action against Lebski, seeking to recover uninsured-underinsured benefits pursuant to her policy. That policy had uninsured-underinsured motorist coverage limits of $300,000.

The parties filed cross motions for summary judgment. On July 7, 2008, the court issued a memorandum of decision granting the defendant's motion for summary judgment and denying Jacaruso's cross motion. The court concluded that the defendant was not liable to Jacaruso for uninsured-underinsured motorist benefits because the $300,000 policy limit was reduced to zero by the $100,000 in combined payments Geico had made to Picone and Jacaruso, as well as the $400,000 the defendant had paid to Picone to settle her negligence claim against Jacaruso.[2] The court further concluded that § 38a-334-6 (d) (1) (A) and (C) of the Regulations of Connecticut State Agencies allowed for such a reduction.

Subsequently, Jacaruso filed this appeal, claiming that the court improperly rendered summary judgment in favor of the defendant and denied her motion for summary judgment.[3] Specifically, Jacaruso claims that

---

[2] In the stipulated facts presented to the trial court, Jacaruso conceded that the defendant was entitled under the policy to a credit against the uninsured-underinsured motorist limit *only* for the $50,000 paid by Geico to Picone. In her brief to this court, however, Jacaruso conceded that the defendant was entitled under the policy to a credit against the uninsured-underinsured motorist limit *only* for the $50,000 Geico paid to her. As a result, apparently overlooking the stipulation she made to the trial court, Jacaruso contends on appeal that uninsured-underinsured motorist benefits in the amount of $250,000 remain from the $300,000 available to her under the terms of the policy prior to any further reductions. We disagree.

Because it is well settled that a party is bound by the concessions made during trial by their attorney; *Levine* v. *Levine*, 88 Conn. App. 795, 804, 871 A.2d 1034 (2005); Jacaruso essentially has conceded that the defendant was entitled under the policy to a credit against the uninsured-underinsured motorist limit for *both* payments made by Geico totaling $100,000. Therefore, we conclude that the defendant is entitled to a credit in that amount, leaving $200,000 in coverage remaining prior to any further reductions.

[3] Although the denial of a motion for summary judgment is not a final judgment and is not ordinarily appealable, the rationale for this rule is not applicable when, as here, cross motions for summary judgment have been filed and the court has granted one of them. Accordingly, we may consider both of the summary judgment rulings contested by Jacaruso on appeal. See *CTB Realty Ventures XXII, Inc.* v. *Markoski*, 33 Conn. App. 388, 391 n.3, 636 A.2d 379, cert. granted on other grounds, 228 Conn. 929, 640 A.2d 115 (1994) (appeal withdrawn July 18, 1994).

the court improperly interpreted the language of the insurance policy and the requirements set forth in § 38a-334-6 (d) (1) (A) and (C) to allow for a reduction in uninsured-underinsured benefits.

We begin by setting forth the applicable standard of review. Practice Book § 17-49 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The court was presented with cross motions for summary judgment that were based on stipulated facts. Therefore, our review is plenary, and we must determine whether the court's conclusions of law are legally and logically correct and find support in the stipulated facts. See *Doucette* v. *Pomes*, 247 Conn. 442, 453, 724 A.2d 481 (1999). Moreover, "[i]nterpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy. . . . Unlike certain other contracts, however, where absent statutory warranty or definitive contract language the intent of the parties and thus the meaning of the contract is a factual question subject to limited appellate review . . . construction of a contract of insurance presents a question of law for the court which this court reviews de novo. . . . Moreover, we have concluded that an insurer may not, by contract, reduce its liability for such uninsured or underinsured motorist coverage except as § 38-175a-6 [now § 38a-334-6] of the Regulations of Connecticut State Agencies expressly authorizes." (Internal quotation marks omitted.) *Nichols* v. *Salem Subway Restaurant*, 98 Conn. App. 837, 841–42, 912 A.2d 1037 (2006). The interpretation of a state regulation is an issue of law over which our review is plenary. See *Executive Services, Inc.* v. *Karwowski*, 80 Conn. App. 124, 126, 832 A.2d 1212 (2003), cert. denied,

268 Conn. 908, 845 A.2d 411 (2004). On appeal, we must determine whether the reduction in benefits at issue is authorized by the language of the policy and whether that language comports with Regulations of Connecticut State Agencies § 38a-334-6 (d) (1) (A) and (C).

Jacaruso first argues that the reduction in uninsured-underinsured motorist benefits claimed by the defendant is not authorized by the policy. Our analysis begins with the provision of the policy that controls uninsured-underinsured motorist benefits, which provides in relevant part: "The limits of this [uninsured-underinsured motorist] coverage and/or any amounts payable under this coverage, whichever are less, will be reduced by: [a] any amount paid by or for any liable parties." It is axiomatic that an insurance policy may provide for a reduction in the policy's stated limits to the extent that an insured has been compensated from other sources for damages sustained during a compensable accident. *Savoie* v. *Prudential Property & Casualty Ins. Co.*, 84 Conn. App. 594, 600, 854 A.2d 786, cert. denied, 271 Conn. 932, 859 A.2d 930 (2004). "The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of section 14-112 of the general statutes, except that the policy may provide for the reduction of limits to the extent that damages have been (A) *paid by or on behalf of any person responsible for the injury* . . . (B) paid or are payable under any workers' compensation law, or (C) *paid under the policy in settlement of a liability claim.*" (Emphasis added.) Regs., Conn. State Agencies § 38a-334-6 (d) (1).

Jacaruso contends that under the plain language of the policy, the defendant is not entitled to the reduction in uninsured-underinsured motorist coverage for the $400,000 payment to Picone because the policy omits an express provision that allows for moneys "paid under

the policy in settlement of a liability claim." Regs., Conn. State Agencies § 38a-334-6 (d) (1) (C). Furthermore, Jacaruso argues, because the policy provision tracks only the language of § 38a-334-6 (d) (1) (A) and omits any language tracking § 38a-334-6 (d) (1) (C), it is clearly intended to credit payments made outside of the subject policy by a tortfeasor to the insured and was not intended to credit the defendant for payments made by the defendant under the liability coverage of the policy to a third party. Jacaruso concludes that the defendant chose not to include in the policy language authorized by § 38a-334-6 (d) (1) (C) and, therefore, under a plain reading of the policy, no reduction for the $400,000 payment the defendant made to Picone is authorized. The defendant, on the other hand, argues that pursuant to the plain, unambiguous language of the policy, it is authorized to reduce the available uninsured-underinsured motorist benefits for all payments to *any* injured party and not merely for payments to the insured.

We agree with the defendant that under the unambiguous terms of the policy and the uncontested facts of this case, it was entitled to reduce the uninsured-underinsured motorist benefits available to Jacaruso by the amount the defendant paid on her behalf to Picone. The policy expressly states that uninsured-underinsured motorist benefits can be reduced by "any amount paid by or for any liable parties." There is no indication that this provision was intended to restrict payments applicable to a reduction in benefits to payments made by tortfeasors outside the policy or to exclude payments made by the defendant to Jacaruso. It is a fundamental principle of insurance policy interpretation that "the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Internal quotation marks omitted.) *Stephan* v. *Pennsylvania General Ins. Co.*, 224 Conn. 758,

764, 621 A.2d 258 (1993). To give the provision the meaning suggested by Jacaruso would be an exercise in formal logic, resulting in this court essentially rewriting the policy. That we cannot do. See *Nichols* v. *Salem Subway Restaurant*, supra, 98 Conn. App. 843.

The relevant language in the policy is plain and unambiguous and, therefore, must be given its natural and ordinary meaning. See *Savoie* v. *Prudential Property & Casualty Ins. Co.*, supra, 84 Conn. App. 601 (insurance policy provisions afforded their natural and ordinary meaning). The term "any amount paid by or for any liable parties" refers to payments made both from within the policy's coverage itself as well as those made by other tortfeasors. Although this provision could have included an express reduction resulting from the amount "paid under the policy in settlement of a liability claim," it need not because the absence of such language alone does not lead to the determination that the provision is ambiguous. The term "any," used to modify both the amount and on whose behalf such payments were made, clearly includes even those amounts paid under the policy by the defendant in settlement of a liability claim. As a result, we conclude that the court properly interpreted the provision of the policy as providing for a reduction in uninsured-underinsured motorist benefits for any payments made in settlement of a liability claim.[4] That conclusion, however, does not end our analysis, as we must now determine whether that

[4] Jacaruso also claims that at the very least, because the provision in the policy allowing for the reduction of uninsured-underinsured motorist benefits tracks only the language of § 38a-334-6 (d) (1) (A) and omits any language tracking § 38a-334-6 (d) (1) (C), it is ambiguous as to whether the defendant is allowed by the language of the policy to reduce those benefits because of its payment to Picone. Because we hold that the relevant language in the policy is plain and unambiguous and that there is no indication that this provision was intended to restrict payments applicable to a reduction in benefits to payments made by tortfeasors outside the policy or to exclude payments made by the defendant to Jacaruso, this claim has no merit.

deduction is authorized under § 38a-334-6 (d) (1) (A) and (C).

"[I]f the policy comports with the language of the regulation, it will be deemed to provide that same level of protection permitted by the regulation. . . . In order for a policy exclusion to be expressly authorized by [a] statute [or regulation], there must be substantial congruence between the statutory [or regulatory] provision and the policy provision." (Internal quotation marks omitted.) *Nichols* v. *Salem Subway Restaurant,* supra, 98 Conn. App. 844. As noted previously, the applicable regulation allows an insurer to limit its uninsured-underinsured motorist liability "to the extent that damages have been (A) paid by or on behalf of any person responsible for the injury . . . or . . . (C) paid under the policy in settlement of a liability claim." Regs., Conn. State Agencies § 38a-334-6 (d) (1). Jacaruso essentially argues that because the policy provision that authorized reduction to the uninsured-underinsured motorist benefits tracks only the language of § 38a-334-6 (d) (1) (A) and omits any language tracking § 38a-334-6 (d) (1) (C), it cannot provide that same level of protection permitted by the regulation because there is no substantial congruence between that provision and the regulation. To determine otherwise, Jacaruso contends, this court would have to interpret § 38a-334-6 (d) (1) (A) to include payments made to third parties under the liability provisions of the subject policy thus rendering "void, superfluous, meaningless and insignificant" § 38a-334-6 (d) (1) (C), which would violate basic judicial tenets of statutory construction to which we are bound. See *Vibert* v. *Board of Education,* 260 Conn. 167, 171, 793 A.2d 1076 (2002) ("[w]hen construing a statute, we do not interpret some clauses in a manner that nullifies others, but rather read the statute as a whole and so as to reconcile all parts as far as possible" [internal quotation marks omitted]).

There is no requirement that the policy provision must be identical to the regulation for it to be expressly provided for by statute. The policy language allows for a reduction of uninsured-underinsured motorist benefits for "any amount paid by or for any liable parties." The defendant's payment to Picone was in settlement of a claim of negligence against Jacaruso, the defendant's insured under the policy. We conclude that the policy provision is an attempt to combine the provisions of § 38a-334-6 (d) (1) (A) and (C) and that it does not materially alter the regulation. See *Nichols* v. *Salem Subway Restaurant,* supra, 98 Conn. App. 845. The change in language between the policy and § 38a-334-6 (d) (1) (C) merely reflects that attempt. This determination does not require this court to interpret § 38a-334-6 (d) (1) (A) in a way that renders § 38a-334-6 (d) (1) (C) void, superfluous, meaningless or insignificant because in determining that the provision and the regulations are substantially congruent, we necessarily conclude that § 38a-334-6 (d) (1) (C) and the terms of the provision correspond in all material respects. In other words, to determine that the provision and regulation are substantially congruent, we need not conclude that *only* § 38a-334-6 (d) (1) (A) is represented in the policy language. We can, and do, conclude that the policy provision reflects a *combination* of § 38a-334-6 (d) (1) (A) and (C), not merely one to the exclusion of the other. We conclude, therefore, that § 38a-334-6 (d) (1) (C) and the provision in the policy correspond in all material respects and that there is substantial congruence between the regulatory provisions and the policy provision. Consequently, because § 38a-334-6 (d) (1) (C) permits a reduction for benefits paid to settle a liability claim, the policy language must be deemed to provide the defendant with a legitimate reduction. See id.; *Vitti* v. *Allstate Ins. Co.,* 245 Conn. 169, 174, 713

A.2d 1269 (1998); *Roy* v. *Centennial Ins. Co.*, 171 Conn. 463, 466, 370 A.2d 1011 (1976).

The judgment is affirmed.

In this opinion HARPER, J., concurred.

BISHOP, J., dissenting. The issue in this appeal is whether the automobile insurance policy (policy) issued by the defendant Nationwide Mutual Insurance Company to the plaintiff, Margaret Jacaruso, provides for a reduction of the monetary limits of her uninsured-underinsured motorist coverage for amounts paid to a third party under the same policy's liability coverage. Although such a reduction is permissible pursuant to § 38a-334-6 (d) (1) (C) of the Regulations of Connecticut State Agencies, I do not believe that the language of the policy issued by the defendant provides for such a reduction. Accordingly, I respectfully dissent.

As indicated in the majority opinion, Richard F. Lebski's motor vehicle collided with the plaintiff's vehicle, causing both the plaintiff and her passenger, Beatrice Picone, to sustain physical injuries. Both the plaintiff and Picone filed legal actions against Lebski, who was insured by Geico at the time of the accident. Geico paid the plaintiff and Picone $50,000 each, thereby exhausting Lebski's liability insurance coverage. Picone had also named the plaintiff as a defendant in her legal action. At the time of the accident, the plaintiff was insured by the defendant, who paid to Picone the sum of $400,000, $300,000 from the plaintiff's automobile liability policy and $100,000 from an umbrella policy.

The plaintiff also sought recovery under her uninsured-underinsured policy, which had a limit of $300,000. The court concluded that the defendant was not liable to the plaintiff for uninsured-underinsured

motorist benefits on the basis of its reasoning that the $300,000 uninsured-underinsured policy limit was reduced to zero by the $100,000 in combined payments Geico had made to Picone and the plaintiff, as well as the $400,000 the defendant had paid to Picone to settle her negligence claim against the plaintiff. The court concluded that such reductions were allowable under § 38a-334-6 (d) (1) (A) and (C)[1] of the Regulations of Connecticut State Agencies and that the language of the policy provides for those reductions.

On appeal, the plaintiff claims that the court improperly concluded that both subparagraphs (A) and (C) authorize a reduction in coverage by virtue of settlement payments made by the defendant under the liability section of the insured's policy. The plaintiff also contends that the reduction in uninsured-underinsured motorist benefits claimed by the defendant, namely, that authorized by subparagraph (C), is not provided for in the policy. I agree with the plaintiff.

I begin my analysis with a review of the applicable statutory and regulatory scheme. Pursuant to General Statutes § 38a-336 (a),[2] all automobile liability policies

---

[1] For ease of reference, I refer to § 38a-334-6 (d) (1) (A) as subparagraph (A) and to § 38a-334-6 (d) (1) (C) as subparagraph (C).

[2] General Statutes § 38a-336 (a) provides: "(1) Each automobile liability insurance policy shall provide insurance, herein called uninsured and underinsured motorist coverage, in accordance with the regulations adopted pursuant to section 38a-334, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom. Each insurer licensed to write automobile liability insurance in this state shall provide uninsured and underinsured motorists coverage with limits requested by any named insured upon payment of the appropriate premium, provided each such insurer shall offer such coverage with limits that are twice the limits of the bodily injury coverage of the policy issued to the named insured. The insured's selection of uninsured and underinsured motorist coverage shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend,

must provide a minimum level of uninsured motorist coverage for the protection of persons insured thereunder. Pursuant to § 38-336 (b), "[a]n insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured and underinsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured and underinsured motorist coverage, exceed

change, supersede or replace an existing policy issued to the named insured, unless changed in writing by any named insured. No insurer shall be required to provide uninsured and underinsured motorist coverage to (A) a named insured or relatives residing in his household when occupying, or struck as a pedestrian by, an uninsured or underinsured motor vehicle or a motorcycle that is owned by the named insured, or (B) any insured occupying an uninsured or underinsured motor vehicle or motorcycle that is owned by such insured.

"(2) Notwithstanding any provision of this section to the contrary, each automobile liability insurance policy issued or renewed on and after January 1, 1994, shall provide uninsured and underinsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless any named insured requests in writing a lesser amount, but not less than the limits specified in subsection (a) of section 14-112. Such written request shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to the named insured, unless changed in writing by any named insured. No such written request for a lesser amount shall be effective unless any named insured has signed an informed consent form which shall contain: (A) An explanation of uninsured and underinsured motorist insurance approved by the commissioner; (B) a list of uninsured and underinsured motorist coverage options available from the insurer; and (C) the premium cost for each of the coverage options available from the insurer. Such informed consent form shall contain a heading in twelve-point type and shall state: "WHEN YOU SIGN THIS FORM, YOU ARE CHOOSING A REDUCED PREMIUM, BUT YOU ARE ALSO CHOOSING NOT TO PURCHASE CERTAIN VALUABLE COVERAGE WHICH PROTECTS YOU AND YOUR FAMILY. IF YOU ARE UNCERTAIN ABOUT HOW THIS DECISION WILL AFFECT YOU, YOU SHOULD GET ADVICE FROM YOUR INSURANCE AGENT OR ANOTHER QUALIFIED ADVISER."

the limits of the insured's uninsured and underinsured motorist coverage. . . ."

Our Supreme Court has explained that § 38a-336, formerly § 38-175c, "does not require that [under]insured motorist coverage be made available when the insured has been otherwise protected . . . . Nor does the statute provide that the [under]insured motorist coverage shall stand as an independent source of recovery for the insured, or that the coverage limits shall not be reduced under appropriate circumstances. The statute merely requires that a certain minimum level of protection be provided for those insured under automobile liability insurance policies; the insurance commissioner has been left with the task of defining those terms and conditions which will suffice to satisfy the requirement of protection." (Internal quotation marks omitted.) *Orkney* v. *Hanover Ins. Co.*, 248 Conn. 195, 205, 727 A.2d 700 (1999).

"The public policy established by the [uninsured-underinsured] motorist statute is to ensure that an insured recovers damages he or she would have been able to recover if the uninsured [or underinsured] motorist had maintained a policy of liability insurance . . . and . . . the amount of overall benefits available to a plaintiff be equal to the amount of *coverage* available from a tortfeasor with an equivalent policy." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Garcia* v. *ITT Hartford Ins. Co.*, 72 Conn. App. 588, 594, 805 A.2d 779 (2002). In other words, underinsured motorist coverage provides protection for the risk that the damages sustained by insureds will not be adequately indemnified by the liability coverage carried by a negligent insured motorist. The remedial purpose of underinsured motorist coverage is to protect and to make whole a person injured at the hands of an uninsured-underinsured motorist.

General Statutes § 38a-334 (a) directs the commissioner to "adopt regulations with respect to minimum provisions to be included in automobile liability insurance policies" and provides that "[s]uch regulations shall relate to the insuring agreements, exclusions, conditions and other terms applicable to the bodily injury liability, property damage liability, medical payments and uninsured motorists coverages . . . ."

"It is clear that one of the purposes of the regulatory reductions is to prevent a double recovery by the claimant. . . . The regulation goes further than just the prevention of double recovery [however] and extends to reduce an insurer's coverage obligation with an expectation that this coverage reduction would have some effect in the form of reduced rates for such coverage." (Citations omitted; internal quotation marks omitted.) J. Berk & M. Jainchill, Connecticut Law of Uninsured and Underinsured Motorist Coverage (3d Ed. 2004) § 6.1, p. 422.

"The regulations, however, must carry into effect the purpose and intent of the statute pursuant to which they are enacted. . . . [A] limitation of liability on uninsured or underinsured motorist coverage must be construed most strongly against the insurer. . . . The regulatory language . . . must be read, therefore, in light of this principle as well as the language and intent of [§ 38a-336]." (Citations omitted.) *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 196–97, 530 A.2d 171 (1987).

In examining the regulations, our rules of statutory construction apply. See *Vitti* v. *Allstate Ins. Co.*, 245 Conn. 169, 178, 713 A.2d 1269 (1998). "It is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act

and that no part of a statute is superfluous. . . . Because [e]very word and phrase [of a statute] is presumed to have meaning . . . [a statute] must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant." (Internal quotation marks omitted.) *PJM & Associates, LC* v. *Bridgeport*, 292 Conn. 125, 138, 971 A.2d 24 (2009). "Elementary rules of statutory construction require the presumption that the legislature [does] not intend to enact superfluous legislation. . . . Where . . . more than one [provision] is involved, we presume that the legislature intended them to be read together to create a harmonious body of law . . . and we construe the [provisions], if possible, to avoid conflict between them. (Citations omitted; internal quotation marks omitted.) *Dodd* v. *Middlesex Mutual Assurance Co.*, 242 Conn. 375, 388, 698 A.2d 859 (1997). The interpretation of a state regulation is an issue of law over which our review is plenary. See *Executive Services, Inc.* v. *Karwowski*, 80 Conn. App. 124, 126, 832 A.2d 1212 (2003), cert. denied, 268 Conn. 908, 845 A.2d 411 (2004).

Section 38a-334-6 (d) (1)[3] of the Regulations of Connecticut State Agencies authorizes an insurer to reduce coverage limits "to the extent that damages have been (A) paid by or on behalf of any person responsible for the injury . . . or (C) paid under the policy in settlement of a liability claim." I believe, respectfully, that the majority conflates these two provisions. It is clear that, by listing these two exceptions separately and in the disjunctive, the commissioner intended them to be

---

[3] Section 38a-334-6 (d) (1) of the Regulations of Connecticut State Agencies provides: "The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of section 14-112 of the general statutes, except that the policy may provide for the reduction of limits to the extent that damages have been (A) paid by or on behalf of any person responsible for the injury, (B) paid or are payable under any workers' compensation law, or (C) paid under the policy in settlement of a liability claim."

two different possible reductions. To read subparagraph (A) as including payments from the insured's liability policy would render subparagraph (C) meaningless or superfluous. Thus, in examining the entire regulatory scheme regarding permissible reductions, it is evident that subparagraph (A) contemplates payments only from *third party* sources. See J. Berk & M. Jainchill, supra, § 6.2.1.A, p. 436 n.22 ("Section 6 [d] [1] [A] of the insurance regulations applies generally to third-party liability payments. Section 6 [d] [1] [B] applies generally to first-party payments received from workers' compensation. Section 6 [d] [1] [C] and 6 [d] [2] apply generally to payments made under the subject policy.").

Turning to the policy issued by the defendant in this case, I note that "[t]he Connecticut rule of construction of insurance policies is well settled. If the terms of an insurance policy are of doubtful meaning, that permissible construction which is most favorable to the insured is to be adopted; but if they are plain and unambiguous the established rules for the construction of contracts apply, the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning, and the courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties." (Internal quotation marks omitted.) *Vitti* v. *Allstate Ins. Co.*, supra, 245 Conn. 176.

"[A]n insurer may not, by contract, reduce its liability for such uninsured or underinsured motorist coverage except as 38-175a-6 of the Regulations of Connecticut State Agencies expressly authorizes." *Allstate Ins. Co.* v. *Ferrante*, 201 Conn. 478, 483, 518 A.2d 373 (1986). "If an insurer wishes to reduce its payment obligation as set forth in the regulations, it must provide for the reductions by the appropriate policy language." J.

Berk & M. Jainchill, supra, § 6.1, p. 421; *Stephan* v. *Pennsylvania General Ins. Co.*, 224 Conn. 758, 763, 621 A.2d 258 (1993). "[I]f the policy comports with the language of the regulation, it will be deemed to provide that same level of protection permitted by the regulation. . . . In order for a policy exclusion to be expressly authorized by [a] statute [or regulation], there must be substantial congruence between the statutory [or regulatory] provision and the policy provision." (Internal quotation marks omitted.) *Nichols* v. *Salem Subway Restaurant*, 98 Conn. App. 837, 844, 912 A.2d 1037 (2006).

The provision of the policy at issue here provides in relevant part: "The limits of [the uninsured-underinsured motorist] coverage and/or any amounts payable under this coverage, whichever are less, will be reduced by: [a] any amount paid by or for any liable parties." The plaintiff asserts that the language of the policy essentially mirrors subparagraph (A) and does not implicate subparagraph (C). I agree. If the defendant had wanted to reduce coverage by the amount it paid out under the insured's liability policy, it could have done so by expressly using policy language tracking subparagraph (C).

The defendant does not contend that both subparagraphs (A) and (C) permit a reduction for amounts paid under an insured's liability policy. Rather, the defendant claims that the broad language of the policy constitutes a combination of the provisions of subparagraphs (A) and (C). In support of its argument, the defendant relies on *Nichols* v. *Salem Subway Restaurant*, supra, 98 Conn. App. 837, and *Allstate Ins. Co.* v. *Lenda*, 34 Conn. App. 444, 642 A.2d 22, cert. denied, 231 Conn. 906, 648 A.2d 149 (1994). Both cases, however, are distinguishable from the case at hand because the policies in both *Nichols* and *Allstate Ins. Co.* explicitly referred to a reduction that was based on payments made pursuant

to an insured's liability policy. In *Nichols*, the policy provided: "Any amount payable under this coverage shall be reduced by any amount . . . paid to or for the insured for bodily injury under the liability coverage . . . ." *Nichols* v. *Salem Subway Restaurant*, supra, 842. In *Allstate Ins. Co.*, the policy provided that the limits of coverage "will be reduced by: (1) all amounts paid by the owner or operator of the uninsured auto or anyone else responsible. This includes all sums paid under the bodily injury liability coverage of this or any other policy." (Internal quotation marks omitted.) *Allstate Ins. Co.* v. *Lenda*, supra, 452. I believe that both *Nichols* and *Allstate Ins. Co.* are consistent with the plaintiff's view because the policies involved in those cases expressly provided for reductions in uninsured-underinsured coverage for payments made under the liability portions of the insureds' policies. This factual difference between the *Nichols* and *Allstate Ins. Co.* policies and the policy at hand is pivotal.

Here, the uninsured-undersinsured portion of the policy is devoid of any mention of the liability provision of the insured's policy. Because there is not a substantial congruence between the language of subparagraph (C) and the language of the policy, I cannot conclude that the policy offers the level of protection permitted by subparagraph (C). Thus, I would conclude that the policy does not provide for the reduction of the amount paid under the plaintiff's liability coverage. Accordingly, I would reverse the judgment and remand the matter with direction to render judgment in favor of the plaintiff.